GERALD A. McINTYRE (SBN 181746)
gmcintyre@nsclc.org
NATIONAL SENIOR CITIZENS LAW CENTER
3660 Wilshire Blvd., Suite 718
Los Angeles, CA 90010
T: (213) 674-2900 / F: (213) 550-4001

ANNA RICH (SBN 230195)
arich@nsclc.org
NATIONAL SENIOR CITIZENS LAW CENTER
1330 Broadway, Suite 525
Oakland, CA 94612
T: (510) 663-1055 / F: (510) 663-1051

Attorneys for Plaintiffs
(*Additional Counsel listed on next page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KEVIN HART, NINA SILVA-COLLINS and LEE HARRIS, on behalf of themselves and all others similarly situated, <br><br>           Plaintiffs, <br><br>     v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, in her official capacity, <br><br>           Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** |

WILLIAM L. STERN (SBN 96105)
WStern@mofo.com
CLAUDIA M. VETESI (SBN 233485)
CVetesi@mofo.com
ROBERT T. PETRAGLIA (SBN 264849)
RPetraglia@mofo.com
ELIZABETH BALASSONE (SBN 280563)
EBalassone@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
T: (415) 268-7000 / F: (415) 268-7522

TRINH PHAN (SBN 267288)
tphan@legalaidsmc.org
HOPE NAKAMURA (SBN 126901)
hnakamura@legalaidsmc.org
LEGAL AID SOCIETY OF SAN MATEO COUNTY
330 Twin Dolphin Drive, Suite 123
Redwood City, CA 94065
T: (650) 558-0915 / F: (650) 517-8973

Plaintiffs Kevin Hart, Nina Silva-Collins and Lee Harris, by and through their attorneys, bring this action on behalf of themselves and all others similarly situated, against Carolyn W. Colvin in her official capacity as Acting Commissioner of Social Security ("Defendant"), and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this class action to challenge Defendant's reliance on consultative examinations (CEs), performed by a physician who is now disqualified, in denying or terminating disability benefits. This physician, Dr. Frank Chen, routinely submitted reports that were not based on medically acceptable clinical diagnostic techniques. As numerous complaints from applicants demonstrate, Dr. Chen's CE reports contained false statements and were based on cursory examinations and inadequate communication with his patients. These CE reports were then relied upon, in whole or in part, to deny or terminate Supplemental Security Income (SSI) and/or Social Security Disability Insurance (SSDI) to Plaintiffs and members of the proposed class. By this action, Plaintiffs seek the reopening of prior determinations where Defendant relied on a report by Dr. Chen, and the opportunity to receive a new CE from a well-qualified clinician.

2. In order to qualify for benefits based on disability under either SSI or SSDI, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

3. The Social Security Act and the regulations promulgated thereunder require that Defendant "need[s] evidence from acceptable medical sources to establish whether [an individual has] a medically determinable impairment." 20 C.F.R. §§ 404.1513(a), 416.913(a).

4. In order to have adequate medical evidence of an individual's disabilities, it is frequently necessary to procure a CE from a qualified medical source. 20 C.F.R. § 404.1517 *et seq.*

5. For many years, Dr. Chen performed a large volume of these CEs in San Francisco and surrounding counties. He regularly issued reports that he knew were incorrect or incomplete,

1  including statements that he performed tests he did not in fact perform and conclusions that were

2  inconsistent with medical evidence already in the record, with no explanation or even

3  acknowledgement of the inconsistency.

4        6.     On the basis of numerous complaints from applicants and their representatives

5  over a period of years, Dr. Chen was disqualified from continuing to provide CEs as of December

6  30, 2013.  His CE reports, however, continue to be treated as competent evidence by the Social

7  Security Administration (SSA) and used in determinations to deny or terminate SSI and SSDI

8  benefits.  20 C.F.R. §§ 404.1503a, 416.903a.

9        7.     Plaintiffs challenge Defendant's policy and practice of relying on Dr. Chen's

10  defective CE reports in denying or terminating disability benefits, in violation of its requirement

11  to base such determinations on evidence from acceptable medical sources.

12        8.     SSA regulations also require that Defendant monitor and ensure the adequacy of

13  the CE process and providers.  42 U.S.C. § 421(j)(3); 20 C.F.R. §§ 404.1519s(g), 416.919s(g).

14  Defendant's policy and practice of relying on Dr. Chen's defective CE reports in denying or

15  terminating disability benefits is contrary to this mandate.

16        9.     SSDI and SSI applicants and beneficiaries represent a population with education

17  levels well below the national average.  These individuals are almost never represented by

18  counsel during the application process or on reconsideration, which is the first phase of the

19  administrative appeal process.

20        10.     Plaintiffs and class members were neither notified of the disqualification of

21  Dr. Chen nor provided copies of his reports at the time of their denial or termination.

22  Accordingly, they had no basis for knowing that their disability determinations were based in part

23  on incorrect, incomplete medical reports.

24  **JURISDICTION AND VENUE**

25        11.     This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

26        12.     Venue in this Court is proper pursuant to 42 U.S.C. § 405(g) because at least one

27  named Plaintiff resides within the Northern District of California.

28

**PARTIES**

13. Plaintiff Kevin Hart is a resident of San Mateo County who receives SSI and SSDI benefits and is facing termination of his benefits after a consultative examination by Dr. Chen.

14. Plaintiff Nina Silva-Collins is a resident of Alameda County who was denied SSI after a consultative examination by Dr. Chen.

15. Plaintiff Lee Harris is a resident of Alameda County who was denied SSI after a consultative examination by Dr. Chen.

16. Defendant Carolyn W. Colvin is the Acting Commissioner of Social Security, charged by federal law with administering and supervising all benefit programs administered by SSA nationwide, including SSI and SSDI.  The Commissioner is responsible for determining eligibility for SSI and SSDI benefits and is authorized to reopen and review these determinations.  She is sued in her official capacity as the official charged with performing the statutory and regulatory duties of SSA and its divisions, agents, employees and representatives.

**INDIVIDUAL PLAINTIFF ALLEGATIONS**

**Plaintiff Kevin Hart**

17. Plaintiff Kevin Hart is a fifty year old man who was struck by a car on October 2, 2007, shattering his right leg.  Mr. Hart underwent two surgeries in the following months to attempt to repair his leg, but still experiences tremendous pain and limited mobility.  His leg injury has also resulted in related ankle and leg pain, and the growth of cysts on his feet.  He needs a cane to walk.  The resulting decrease in mobility has also caused other health effects, such as increased blood pressure and cholesterol and swelling in the feet.  He also suffers from diabetes and emphysema.  Mr. Hart suffers substantial pain and is significantly limited in his day-to-day activities.  He cannot stand or sit for long periods of time.

18. While he wants to be able to work, Mr. Hart is incapable of sustained employment due to his medical conditions.  Mr. Hart worked from the time he was a teenager until his accident.  He started out doing construction, carpentry, painting and roofing.  He spent a number of years working for GMG, a Port of San Francisco janitorial contractor.  Then he worked as a loader for Blue Diamond Growers in Sacramento, California, and then as a groundskeeper for Cal

Expo in Sacramento, until his accident in 2007. Mr. Hart attempted to return to his job at Cal Expo in 2008 after the two surgeries and extensive physical therapy. He had to stop working after less than a week because he was physically unable to perform the duties of the job. He also contacted Blue Diamond Growers about returning to work there; however, he could not return to the job because he was again physically unable to perform the duties of a loader.

19.     Immediately after the accident, Mr. Hart underwent open reduction internal fixation (ORIF) surgery to try to repair his ankle fracture, where hardware (an "internal fixation" device) is placed on the bone.

20.     In a June 2008 medical report, a doctor from UC Davis Medical Center explained that Mr. Hart probably suffered from a "non-union of the fibular site that was very painful" and while his ankle "would improve somewhat over time," Mr. Hart "would likely have abnormalities in terms of decreased range of motion and abnormal gait related to his injury."

21.     The hardware in Mr. Hart's ankle was surgically removed on June 18, 2008, leaving him with residual pain and stiffness. At an August 18, 2008 consultation, Mr. Hart presented with "occasional sharp shooting pain" and "leg swelling on extensive walking."

22.     Medical records from UC Davis Medical Center and Sacramento County DHHS show that Mr. Hart was also diagnosed with emphysema, hypertension, and eczema in late 2008, and insomnia in early 2010.

23.     On April 23, 2010, an Administrative Law Judge ("ALJ") found Mr. Hart to be disabled with an onset established retroactive to 2007, due to his history of right ankle fracture, emphysema, and hypertension. Mr. Hart was assessed to have "less than sedentary residual functional capacity."

24.     Then, on April 12, 2013, Mr. Hart was violently attacked by a group of teenagers in San Francisco. He sustained a non-displaced rib fracture, a serious kidney laceration with hematoma, ruptured cyst, and multiple abrasions. After the attack he urinated blood. The hospital examination also revealed that Mr. Hart suffered from polycystic kidney disease.

25.     Mr. Hart's medical records show that, independent of his injuries from the attack, Mr. Hart's health declined in many respects after he was found to be disabled. Progress notes

from his treatment at San Mateo Medical Center in 2013 showed that Mr. Hart had a mass on his right foot that was diagnosed as plantar fibromatosis. The 2013 records also note new problems with Mr. Hart's foot, including a "nodule at plantar to forefoot/midfoot, along the medial margin of plantar fascia." Mr. Hart was also diagnosed with "polcycstic kidney NOS; Diabetes Mellitus, Type II;" "Hyperlipidemia and Plantar Fibromatosis." After the attack, Mr. Hart developed debilitating back pain.

26. In 2013, SSA notified Mr. Hart that he was scheduled for a continuing disability review (CDR) to determine if he continued to meet the disability standard. The CDR differs from the initial disability determination in that the first step is to determine if there has been any medical improvement since the date he was first determined to be disabled. If medical improvement related to ability to do work cannot be established, and no exceptions apply, benefits will continue. 20 C.F.R. § 404.1594.

27. As part of his CDR, Mr. Hart was referred to Dr. Chen for a consultative examination, which he received on August 15, 2013.

28. Dr. Chen's entire examination of Mr. Hart lasted approximately ten minutes.

29. Dr. Chen did not complete a full physical examination of Mr. Hart. He asked Mr. Hart about his condition, but when Mr. Hart attempted to explain the diagnosis he had received from his doctors during his hospitalization, Dr. Chen repeatedly interrupted him by asking "who told you that?" It appears that Dr. Chen did not review Mr. Hart's medical records, which would have corroborated his explanations of his ailments. Dr. Chen did not show any interest in learning about Mr. Hart's condition.

30. In a subsequent report entitled "Comprehensive Internal Medicine Evaluation," dated August 15, 2013, Dr. Chen incorrectly identified Mr. Hart's "Chief Complaint" as "Hypertension" and "Intermittent shortness of breath." His only two diagnoses were "[h]ypertension," and "symptoms of intermittent shortness of breath on exertion."

31. Dr. Chen's report claims that he completed tests that he did not in fact perform. The report gave results for numerous range of motion tests that would have required Dr. Chen to physically manipulate Mr. Hart's body. However, Dr. Chen did not touch Mr. Hart's body with

his hands during the examination, ask him to lie down on the examination table, or ask him to remove his clothes or shoes. He did not perform standard tests for strength or range of motion. He did not perform even basic tests, such as listening to Mr. Hart's chest with a stethoscope.

32.     Neither Dr. Chen's diagnoses nor his functional capacity assessment include any mention of Mr. Hart's leg. Dr. Chen completely omitted Mr. Hart's leg and feet ailments from these sections, despite the fact that Mr. Hart arrived at his CE with his cane, an assistive device. Dr. Chen briefly looked at the scar on Mr. Hart's leg, but only after Mr. Hart proactively described his surgeries. He asked Mr. Hart to stand on his right leg while lifting his left leg. When Mr. Hart responded that he was physically unable to stand one-legged on his right leg, Dr. Chen had him sit down and hit his knees with a hammer to test his reflexes. He did not perform any additional examination or test of Mr. Hart's ability to stand or walk. He did not at any point observe Mr. Hart walking without his cane.

33.     Dr. Chen concluded that Mr. Hart was capable of standing and walking for six hours in an eight hour day, and sitting for six hours in an eight hour day. He opined that Mr. Hart could carry "50 pounds occasionally and 2 pounds frequently." Mr. Hart, however, cannot stand or walk for more than a few minutes without the assistance of a cane, and he cannot sit for long periods of time without experiencing painful swelling in his feet.

34.     After Dr. Chen's evaluation, Mr. Hart received a notice from SSA dated September 11, 2013 telling him that his benefits were being terminated because he was no longer disabled. He did not receive a copy of the CE report. He promptly filed a Request for Reconsideration on September 30, 2013, stating "I am disabled. The doctor that I was sent to did not examine me." A hearing was scheduled for February 26, 2014 before a Disability Hearing Officer. He was not represented by counsel at the Reconsideration hearing. Although Dr. Chen had been disqualified two months before the hearing, neither SSA nor Disability Determination Service Division of the California Department of Social Services (DDSD) ever notified him of Dr. Chen's disqualification.

35.     In a written order dated March 17, 2014, the Disability Hearing Officer found that Mr. Hart's physical impairments had "medically improved" since the Comparison Point Decision

(CPD) and that he is no longer disabled. The Order specifically cited Dr. Chen's report for its opinion that "the claimant is able to do medium work activities." Despite the fact that Mr. Hart had submitted evidence from another doctor concluding Mr. Hart had "limitations approximate to less than sedentary work ability," the Order found that Dr. Chen's opinion "is more reasonable as consistent and supported by medical evidence."

36. On March 25, 2014, Mr. Hart filed a Request for Hearing by an ALJ. He is awaiting his hearing.

37. Mr. Hart currently lives with his seventy-eight-year-old mother in San Mateo. He tries to help his mother with chores around the house but his disability makes simple tasks, like doing the dishes, extremely difficult. He worries about having enough money to meet basic needs like paying rent and buying food, let alone paying for the special shoes and inserts that his doctor has prescribed to take care of his feet. He struggles to get by with his monthly SSI and SSDI disability benefits, and cannot imagine how he will meet these basic life necessities without it. That monthly benefit is his only income.

**Plaintiff Nina Silva-Collins**

38. Plaintiff Nina Silva-Collins is a thirty-eight year old woman who suffers from severe, chronic anemia caused by menorrhagia (abnormally heavy and prolonged menstrual bleeding), lumbar degenerative disc disease, depression, anxiety, asthma, and hypertension.

39. Menorrhagia is Ms. Silva-Collins' most debilitating condition, resulting in a period of intense bleeding that can last up to three weeks per menstrual cycle. She has been hospitalized repeatedly as a result, and treated with blood transfusions and medication. She brings a change of clothes everywhere she goes because she bleeds so heavily. When she is menstruating, she has to go to the restroom once an hour. This makes even sedentary work impossible.

40. Ms. Silva-Collins applied for SSI and SSDI benefits on September 7, 2011, when her condition required multiple blood transfusions at St. Rose Hospital in Hayward, California. Her claim was denied initially on February 8, 2012. Ms. Silva-Collins filed a timely request for reconsideration on February 16, 2012, which was denied on July 19, 2012. Ms. Silva-Collins

filed a written request for a hearing on August 13, 2012.  A hearing before an ALJ was held on July 2, 2013, but a supplemental hearing was set when the ALJ determined that a CE was needed.

41.     On August 10, 2013, Ms. Silva-Collins was examined by Dr. Chen at the Bay View Medical Clinic in Oakland, California.

42.     Dr. Chen's entire examination lasted approximately ten minutes.

43.     Dr. Chen did not complete a full physical examination of Ms. Silva-Collins.  He lifted Ms. Silva-Collins' leg, and asked her to bend over and squat.   Dr. Chen asked her how much she could pick up, and she explained that her ability to lift items varied due to the cyclical menorrhagia.  Ms. Silva-Collins' vital signs were not taken, nor did Dr. Chen use a stethoscope to listen to her heart beat.  Dr. Chen did not use a hammer or other instrument to test her reflexes, and he did not test her grip or strength.  Ms. Silva-Collins was never asked to remove her clothes, shoes or socks, and her body was not measured or palpated.  Dr. Chen did not ask Ms. Silva-Collins any questions about her menorrhagia, anemia, or other blood issues, or the effect that these chronic conditions had on her physical capabilities.

44.     In a subsequent report, titled "Comprehensive Internal Medicine Evaluation," Dr. Chen made only two diagnoses: "[l]ow back pain, possibly due to obesity," and "obesity." Neither his diagnoses nor the functional capacity assessment mention Ms. Silva-Collins' menorrhagia or anemia.

45.     Dr. Chen's report claims that he completed tests that he did not in fact perform. The report gave results for numerous strength and range of motion tests that he did not perform.

46.     Dr. Chen concluded, as he did with Mr. Hart, that Ms. Silva-Collins was capable of standing and walking for six hours in an eight hour day, and sitting for six hours in an eight hour day.  He opined that she could occasionally bend, stoop, and crouch, and warned only that Ms. Silva-Collins should "avoid climbing ladders and scaffolds."

47.     Following the supplemental hearing on January 8, 2014, the ALJ denied her claim for benefits in a written order dated January 16, 2014.  In concluding that Ms. Silva-Collins was not disabled, the ALJ gave "great weight to the opinion of consultative examiner Dr. Chen" and noted "[h]is examination is the most thorough and detailed in the record, and well supported by

the medical evidence as a whole, thus, the undersigned gives his opinion great weight to the extent that it is consistent with this decision."

48.     Ms. Silva-Collins was never notified by SSA or DDSD of Dr. Chen's disqualification as a consultative examiner.

49.     Upon learning of Dr. Chen's disqualification as a consultative examiner, Ms. Silva-Collins' attorney sent a letter on February 12, 2014 to the ALJ, attaching a letter from the California Department of Social Services explaining that Dr. Chen had been disqualified, and asking the ALJ to reconsider the unfavorable decision.  This request was denied.

50.     Ms. Silva-Collins filed an appeal to the SSA Appeals Council, and is currently awaiting their decision.

51.     Ms. Silva-Collins is incapable of sustained employment due to her medical conditions.  While she has had some temporary, unskilled jobs—an assembly line worker from January to June 2011, and a warehouse worker with United Parcel Service between June 2000 and February 2003—her highest lifetime earnings in any single year was $6,321 in 2001. Ms. Silva-Collins has no high school diploma or GED, and no other skills or means to earn a living.

52.     Ms. Silva-Collins currently lives with her father and survives on CalFresh (food stamps) and $336 a month in General Assistance, much of which she gives to her father in exchange for his support.  Ms. Silva-Collins has applied for Medi-Cal, but that application is currently pending.  SSI would allow Ms. Silva-Collins a measure of independence and stability, and a means to afford needed medical supplies (such as heavy-duty menstrual pads) and other life necessities.

**Plaintiff Lee Harris**

53.     Plaintiff Lee Harris is a fifty-four year old man who has suffered from debilitating pain since a car accident in April 2005 during which he fractured both of his ankles and injured his lower back.  A CT scan at the time of the accident revealed multiple transverse process fractures involving the lower thoracic spine and lumbar spine.  On April 13, 2005, Mr. Harris had surgery to repair the fractures in his right heel bone and left foot that left him in a short leg cast.

The next week, he underwent another surgical repair to repin the right heel bone fracture and the screw in his left foot fracture.

54.     The hardware in his right heel bone caused continued, debilitating pain, and Mr. Harris had another surgery to remove it in January 2006.

55.     Mr. Harris is incapable of sustained employment due to his medical conditions. Before his accident, Mr. Harris worked as an auto dismantler for Dorris Auto Wreckers. Mr. Harris has also worked in warehousing, anodizing, and construction. While he wants to be able to work again, he is in too much pain.

56.     Mr. Harris applied for SSI benefits on August 9, 2011. SSA referred Mr. Harris to Dr. Chen for a consultative examination, which he received on October 28, 2011.

57.     Mr. Harris was examined by Dr. Chen at the Bay View Medical Clinic in Oakland, California. Mr. Harris was accompanied by his son, who was approximately six or seven years old at the time.

58.     Dr. Chen's entire examination lasted approximately twelve minutes.

59.     Dr. Chen did not complete a full physical examination of Mr. Harris. He asked Mr. Harris to take off his socks and shoes. Dr. Chen looked at Mr. Harris' feet. Dr. Chen did not use a hammer or other instrument to test his feet.

60.     Dr. Chen asked Mr. Harris to stand without his cane. Mr. Harris attempted to stand, but he had to grab the examination table immediately. Dr. Chen told him to stop grabbing the table, to which Mr. Harris responded that he could not.

61.     Mr. Harris took out his medications to show Dr. Chen, but the doctor said that he did not need to see them and asked no questions about them. Dr. Chen did not ask Mr. Harris any questions about his conditions or his physical capabilities.

62.     Dr. Chen's report claims that he completed tests that he did not in fact perform. The report gave results for numerous range of motion tests that would have required Dr. Chen to physically manipulate Mr. Harris's body. However, Dr. Chen did not touch Mr. Harris's body during the examination. He did not perform standard tests for strength or range of motion. He did not perform even basic tests, such as listening to Mr. Harris's chest with a stethoscope.

63.     Dr. Chen concluded that Mr. Harris did not need to use his cane to walk short distances, even though he had never seen Mr. Harris stand without it.  Dr. Chen also concluded that Mr. Harris could sit for six hours, stand and walk for six hours in an eight-hour workday, lift and carry 25 pounds frequently, and lift and carry 50 pounds occasionally.

64.     Mr. Harris's application was denied on November 18, 2011, and again upon reconsideration on May 16, 2012.  Thereafter, Mr. Harris filed a written request for hearing on June 19, 2012.  That hearing was held before an ALJ on April 29, 2013.

65.     In a written order dated June 4, 2013, the ALJ determined that Mr. Harris has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 416.967(c).  The decision states that "the examination by Dr. Chen indicates far greater functionality than alleged by the claimant."  The ALJ "assign[ed] the greatest weight to Dr. Chen's opinion because he personally examined the claimant."

66.     Mr. Harris applied again for SSI benefits on November 14, 2013.

67.     On November 14, 2013, Mr. Harris's counsel arranged a physical and forensic examination of Mr. Harris by Dr. Emily Cohen.  Dr. Cohen diagnosed Mr. Harris with chronic lumbosacral pain, chronic ankle/foot pain, acute left forearm pain, and hypertension.  Dr. Cohen concluded that Mr. Harris could walk and/or stand for about two hours out of an eight-hour work day, and sit for six hours out of an eight-hour work day.  Given his instability, Dr. Cohen found that Mr. Harris could only lift and carry about ten pounds frequently and occasionally.

68.     On July 21, 2014, SSA referred Mr. Harris to Dr. Calvin Pon for a consultative examination, which he received on August 8, 2014.  Mr. Harris was examined by Dr. Pon at the Bay View Medical Clinic in Oakland, California.  Dr. Pon similarly diagnosed Mr. Harris with chronic low back pain and chronic bilateral heel-foot pain.

69.     Mr. Harris's claim was denied initially on August 28, 2014.  This initial determination stated that Mr. Harris's CE was "reviewed and compared with CE by Dr. Chen in prior file."  Mr. Harris sent a request for reconsideration on September 12, 2014, which was denied on January 26, 2015.  Mr. Harris filed a written request for a hearing on February 4, 2015.  That request is pending.

70.     Mr. Harris lives alone in an apartment in Oakland, California.  His disability makes simple tasks extremely difficult.  For example, Mr. Harris has to depend on others to do his grocery shopping, since he is unable to carry the shopping bags.  He struggles to get by with his monthly $336 in General Assistance benefits and $189 in food stamps.  He often has to seek financial assistance from his brother and sister to meet basic life necessities.

71.     Receiving SSI benefits would not only help Mr. Harris meet these basic needs, but it would allow him to visit his eleven year old son, who currently lives in Reno, Nevada.

**DISQUALIFICATION OF CONSULTATIVE EXAMINER DR. FRANK CHEN**

72.     Dr. Frank Chen is a medical doctor who was appointed by DDSD to be on its CE panel, and saw applicants for disability benefits in at least four different clinics, in San Francisco, Oakland, San Jose, and Pacific Grove, California.

**Complaints Against Dr. Frank Chen**

73.     Over the years, applicants and their representatives filed numerous complaints against Dr. Chen with DDSD, explaining that he had not actually conducted full physical examinations as he stated in his reports.  His examinations were not based on medically acceptable clinical diagnostic techniques, and sometimes included unauthorized neurological examinations.  Dr. Chen's reports ignored diagnoses, findings, and symptoms described in his patients' medical records, which he claimed to have reviewed.  His reports were internally inconsistent.  Applicants also complained that Dr. Chen acted unprofessionally and displayed a lack of attention and concern during their brief appointments.  He interrupted applicants when they tried to describe their diagnoses and symptoms and laughed when they described the list of medications they were taking.  He made inappropriate comments about religion and about patients' personal characteristics.  When applicants described certain conditions, Dr. Chen responded that they should go "tell the mental examiner" or "save it for the mental doctor."

**Corrective Action Letters to Dr. Frank Chen**

74.     On September 2, 2011, DDSD sent Dr. Chen an initial Corrective Action letter identifying four areas of concern: the quality of his CE reports, the lack of thoroughness of his

examinations, religious comments made during examinations, and conducting unauthorized neurological examinations.

75. DDSD sent a second Corrective Action letter to Dr. Chen on October 14, 2013, identifying continuing problems with the quality of his CE reports, the lack of thoroughness of his examinations, and his unprofessional manner towards applicants.

## **Removal from CE Panel**

76. Finding Dr. Chen had not made the changes required to provide adequate service and continuing to receive complaints about Dr. Chen, the DDSD removed Dr. Chen from the CE panel as of December 30, 2013 due to Dr. Chen's "unprofessional manner and failure to adequately correct deficiencies in his CE reports."

77. Plaintiffs and members of the class were given no notice of Dr. Chen's disqualification.

78. Even after his disqualification, Dr. Chen's reports have still been treated as competent evidence by the Social Security Administration. His reports continue to be relied upon by the Office of Disability Adjudication and Review (ODAR) and courts making determinations of eligibility for benefits.

## **LEGAL FRAMEWORK**

79. The Social Security Act requires the SSA to provide benefits to qualified individuals with disabilities who are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

80. While the SSA administers these benefit programs, it contracts with state agencies to make the disability determinations under standards established by SSA. 20 C.F.R. § 404.1503(a). In California, these disability determinations are made by the DDSD.

## **Standards for Medical Evidence**

81. The existence of an individual's disabling impairment must be supported by medical evidence: "there must be medical signs and findings, established by medically acceptable

clinical or laboratory diagnostic techniques[.]" 42 U.S.C. § 423(d)(5)(A); *see also* 42 U.S.C. § 1382c(a)(3)(D).

82. Defendant is responsible for establishing uniform standards to be applied at all levels of disability determinations. 42 U.S.C. § 421(k)(1). The determination that an individual is disabled must be based on "evidence from acceptable medical sources" to establish whether an individual has a medically determinable impairment. 20 C.F.R. §§ 404.1513(a), 416.913(a).

83. If the evidence provided by the claimant's own medical sources is inadequate to determine if he or she is disabled, additional medical information may be sought by contacting claimant's sources or by arranging for a consultative examination.

84. Defendant violated its mandate under the SSA and its implementing regulations to use evidence from acceptable medical sources by relying upon deficient CE reports from Dr. Chen in denying or terminating SSI and SSDI benefits.

**Consultative Examinations and Reports**

85. CEs are one-time physical or mental examinations performed by medical doctors and other health professionals who are contractors with the DDSD.

86. The SSA's internal operating instructions—known as the Program Operations Manual System ("POMS")—list specific tests which should be performed for different types of exams. POMS Disability Insurance (DI) 22510.021 *et seq.*, *available at* https://secure.ssa.gov/apps10/poms.nsf/partlist. The POMS provisions also list minimum scheduling intervals for different types of exams to "[a]llow sufficient time to permit the medical source to take a case history and perform the examination, including any needed tests." *Id.* at DI 39545.250. For example, the minimum scheduling interval for a comprehensive general medical examination is "at least 30 minutes." *Id.*

87. Following the CE, the examiner submits a CE report to the DDSD.

88. The SSA has promulgated specific guidelines regarding the content of these CE reports. *Consultative Examinations: A Guide for Health Professionals* Part III, *available at* http://www.ssa.gov/disability/professionals/greenbook/ce-guidelines.htm. The guidelines direct a CE to use "standard reporting principles for a complete medical examination," including detailed

reporting of the applicant's medical history, the results of the physical examination, any laboratory findings, and discussion of conclusions. *Id.*

89. The guidelines also state that the CE report "should be complete enough to enable an independent reviewer to determine the nature, severity and duration of the claimant's impairment," as well as "the claimant's ability to perform basic work-related functions." *Id.* The physician must provide a narrative of the applicant's medical history and the physical examination. *Id.*

90. The guidelines require that conclusions in the CE report must be consistent with "all available information," including the "objective clinical findings found on examination and the claimant's symptoms" and medical history. *Id.* For adults, the CE report "should include a description, based on the [CE's] own findings, of the individual's ability to do basic work-related activities. It should not include an opinion as to whether the claimant is disabled under the meaning of the law." *Id.*

91. The guidelines explicitly outline seven requirements for a CE report. It must:

> Provide evidence that serves as an adequate basis for disability decision-making in terms of the impairment it assesses.
>
> Be internally consistent, and ensure that all the diseases, impairments and complaints described in the history are adequately assessed and reported in the clinical findings.
>
> Correlate conclusions with the medical history, the clinical examination and laboratory tests, and explain all abnormalities.
>
> Be consistent with the other information available within the specialty of the examination requested.
>
> Mention important or relevant complaints within the consultative examiner's specialty that is noted in other evidence in the file (*e.g.*, blindness in one eye, amputations, pain, alcoholism, depression).
>
> Be adequate as compared to the standards set out in the course of a medical education.
>
> Be properly signed.

*Id.*

92. The DDSD then relies on the CE report in making its disability recommendation. 20 C.F.R. §§ 404.1517 – 404.1519t, §§ 416.917 – 416.919t.

93. Because a CE report is used in making disability determinations, SSA regulations require that it be evidence from an "acceptable medical source[]." 20 C.F.R. §§ 404.1513(a), 416.913(a).

94. Defendant's reliance upon deficient CE reports from Dr. Chen in denying or terminating SSI and SSDI benefits is contrary to these guidelines.

### Monitoring of Consultative Examinations and Examiners

95. The Social Security Act tasks the Commissioner of Social Security to proscribe regulations through which the consultative examination process and its examiners are monitored. 42 U.S.C. § 421(j)(3) ("The Commissioner of Social Security shall prescribe regulations which set forth . . . procedures by which the Commissioner of Social Security will monitor . . . the product of professionals to whom cases are referred.").

96. Defendant is responsible for monitoring and ensuring the adequacy of the CE process, including providers. *See* 20 C.F.R. §§ 404.1519s(g), 416.919s(g) ("The State agencies will cooperate with us when we conduct monitoring activities in connection with their oversight management of their consultative examination programs.").

97. The SSA's policy and practice of relying upon CE reports performed by Dr. Chen is contrary to Defendant's duty to monitor and ensure the adequacy of the CE process and providers.

### Disqualified Consultative Examiners

98. The SSA may disqualify a medical provider from performing CEs on its behalf. Social Security Hearings, Appeals, and Litigation Law Manual ("HALLEX") Ch. I-2-1-32, *available at* http://ssa.gov/OP_Home/hallex/hallex.html.

99. Even after an examiner has been disqualified, Defendant may still rely on existing reports from that examiner as "existing medical evidence." *See* 20 C.F.R. §§ 404.1503a, 416.903a ("We will not use in our program any individual or entity, *except to provide existing medical evidence*, who is currently excluded, suspended, or otherwise barred[.]") (emphasis added). But to the extent that Defendant relies on those existing reports—where those reports are deficient and the CE has been disqualified, at least in part, because of such deficiency—to

determine an individual's disability, such policy and practice violates Defendant's obligation to use evidence from acceptable medical sources. 20 C.F.R. §§ 404.1513(a), 416.913(a).

100. There is no rule or regulation directing SSA employees to provide applicants whose benefits have been denied or terminated any notice that their examiner has been disqualified. According to "HALLEX"—the Hearings, Appeals, and Litigation Law Manual that provides policies and guidance for processing and adjudicating disability claims—the SSA leaves it to the state agency to decide whether they should provide notice to the Office of Disability Adjudication and Review. HALLEX Ch. I-2-1-32(A) (DDS "*may* provide formal notice" to the ODAR of a disqualification and "*[i]n most circumstances*, DDS will identify cases pending in ODAR that require further action because the record contains a consultative examination performed by the disqualified consultative examiner.") (emphasis added).

101. Moreover, any review of a denial or termination of benefits is done on an individual basis: an ALJ "must evaluate the allegation of disqualification" based only "on the medical evidence of record" for that claimant, and issue a decision after weighing that evidence. *Id.* I-2-1-32(B). The ALJ "will not rely on or associate evidence of a consultative examiner disqualification submitted by one claimant with a different claimant's file." *Id.*

## Review of Disability Determinations

102. The Commissioner of Social Security has the authority to review any disability determination, either before or after any action is taken to implement the disability determination. 42 U.S.C. § 421(c)(1).

103. SSA has promulgated regulations dictating the circumstances under which an applicant's disability determination or decision may be reopened for both the SSDI and SSI programs. For the SSDI program, 20 C.F.R. § 404.988 states:

> A determination, revised determination, decision, or revised decision may be reopened—
>
> (a) Within 12 months of the date of the notice of the initial determination, for any reason;
>
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined in § 404.989, to reopen the case; or

(c) At any time if—

(1) It was obtained by fraud or similar fault (see § 416.1488(c) of this chapter for factors which we take into account in determining fraud or similar fault)[.]

104. For the SSI program, 20 C.F.R. § 416.1488 states:

A determination, revised determination, decision, or revised decision may be reopened—

(a) Within 12 months of the date of the notice of the initial determination, for any reason;

(b) Within two years of the date of the notice of the initial determination if we find good cause, as defined in § 416.1489, to reopen the case; or

(c) At any time if it was obtained by fraud or similar fault. In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which you may have had at the time.

105. "Good cause" for reopening a determination or decision will be found if:

(1) New and material evidence is furnished;

(2) A clerical error in the computation or recomputation of benefits was made; or

(3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made.

20 C.F.R. §§ 404.989, 416.1489.

106. "Fraud" exists "when a person, with intent to defraud, either: (1) Makes or causes to be made a false statement or misrepresentation of a material fact for use in determining rights to Social Security benefits; or (2) Conceals or fails to disclose a material fact for use in determining rights to Social Security benefits." POMS General (GN) § 04020.010(A)(1).

107. "Similar fault" exists "when a person either: (1) Knowingly makes an incorrect or incomplete statement that is material to the determination; or (2) Knowingly conceals information that is material to the determination. However, fraudulent intent is not required." *Id.* GN § 04020.010(A)(2).

108.    Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

109.    This class consists of:

> All persons whose SSI disability or SSDI benefits were either denied or terminated and for whom a consultative examination report was prepared by Dr. Frank Chen.

110.    The class is so numerous that joinder of all members is impracticable. While the exact number of class members can only be obtained through appropriate discovery, on information and belief, there are hundreds and possibly thousands of class members whose SSI and/or SSDI benefits were either denied or terminated because of reliance upon, in whole or in part, a consultative examination report from Dr. Chen.

111.    There are questions of law and fact common to all class members that predominate over questions only affecting individual class members. Such questions include, among others:

a.    Whether Defendant violated its mandate under the SSA and its implementing regulations to use evidence from acceptable medical sources by relying upon deficient CE reports from Dr. Chen in denying or terminating SSI and SSDI benefits.

b.    Whether Defendant violated its obligation under the SSA and its implementing regulations to monitor and ensure the adequacy of the consultative examination process and providers by relying upon deficient CE reports from Dr. Chen in denying or terminating SSI and SSDI benefits.

c.    Whether Plaintiffs and members of the class were deprived of due process by Defendant's failure to provide them with a complete and thorough consultative examination by a competent consultative examiner, in violation of the Fifth Amendment of the U.S. Constitution.

d.    Whether Plaintiffs and members of the class were deprived of due process by Defendant's failure to notify them of the disqualification of Dr. Chen, in violation of the Fifth Amendment of the U.S. Constitution.

e. Whether Plaintiffs and members of the class were deprived of due process by Defendant's failure to provide them with copies of their consultative examination report, in violation of the Fifth Amendment of the U.S. Constitution.

f. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to have their claims reopened and redetermined on the basis of "good cause" because new and material evidence has been furnished as to the adequacy of their CE examinations and reports from Dr. Chen.

g. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to have their claims reopened and redetermined on the basis of "good cause" because those determinations relied on a defective CE report from Dr. Chen that clearly shows on its face that error(s) were made.

h. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to have their claims reopened and redetermined on the basis of "fraud or similar fault" because Dr. Chen knew he was making incorrect or incomplete statements in his CE reports.

i. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to have their claims reopened and redetermined on the basis of "fraud or similar fault" because Dr. Chen knowingly concealed material information when he prepared his CE reports.

j. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to a new CE report from an acceptable medical source.

k. Whether, under the Social Security Act and regulations, Plaintiffs and members of the class are entitled to have their claims reopened and redetermined without any reliance on Dr. Chen's consultative examination and report.

112. Plaintiffs' claims are typical of the claims of all class members, and arise from the same need to have their applications reopened and redetermined without any reliance on Dr. Chen's consultative examination reports. The declaratory and injunctive relief sought is common to all class members.

113.     A class action is superior to other available methods for a fair and efficient adjudication of this matter in that the prosecution of separate actions by individual class members would unduly burden the Court and create the possibility of conflicting decisions.

114.     Plaintiffs will fairly and adequately protect the interests of the class members.

115.     The named plaintiffs and the proposed class are represented by National Senior Citizens Law Center, Morrison & Foerster LLP, and Legal Aid Society of San Mateo County, whose attorneys are experienced in class action litigation and will adequately represent the class.

116.     Defendant has acted on grounds generally applicable to the class, by relying on defective CEs from Dr. Chen, that failed to meet the mandates in the SSA and its implementing regulations to use evidence from acceptable medical sources to establish whether an individual has a medically determinable impairment and to monitor and ensure the adequacy of the CE process and providers.

117.     If class certification is not granted, individuals would be forced to bring separate actions, thereby wasting judicial resources, as well as the time of attorneys from government agencies and legal services providers.

## FIRST CAUSE OF ACTION

### FOR DECLARATORY AND INJUNCTIVE RELIEF FOR
### Improper Reliance on Dr. Frank Chen CE Reports

118.     Paragraphs 1 – 117 are each re-alleged and incorporated as if fully set forth herein.

119.     The Social Security Act and the regulations promulgated thereunder, 42 U.S.C. §§ 421, 423 and 1383b, 20 C.F.R. §§ 404.1512 – 404.1513 and 416.912 – 416.913, require Defendant to base disability determinations on evidence from acceptable medical sources.

120.     The SSA's policy and practice of relying upon CE reports performed by Dr. Chen violates Defendant's legal obligation to base disability determinations on evidence from acceptable medical sources.

121.     This policy and practice violates the Social Security Act and its implementing regulations.

1    122.    Defendant has the authority to review the disability determinations of Plaintiffs

2    and class members.  42 U.S.C. § 421(c)(1).

3    123.    Pursuant to the 20 C.F.R. §§ 404.988, 404.989, 416.1488, 416.1489, grounds exist

4    to reopen these determinations.

5                              **SECOND CAUSE OF ACTION**

6                   **FOR DECLARATORY AND INJUNCTIVE RELIEF FOR**
     **Improper Reliance on Dr. Frank Chen CE Reports**
7

8    124.    Paragraphs 1 – 123 are each re-alleged and incorporated as if fully set forth herein.

9    125.    The Social Security Act tasks the Commissioner of Social Security to proscribe

10   regulations through which the consultative examination process and its examiners are monitored.

11   42 U.S.C. § 421(j)(3).

12   126.    SSA regulations assign Defendant responsibility for monitoring and ensuring the

13   adequacy of the CE process and providers.  20 C.F.R. §§ 404.1519s(g), 416.919s(g).

14   127.    Accordingly, the SSA's policy and practice of relying upon CE reports performed

15   by Dr. Chen is irreconcilable with Defendant's duty to monitor and ensure the adequacy of the

16   CE process and providers.

17   128.    This policy and practice violates the Social Security Act and its implementing

18   regulations.

19   129.    Defendant has the authority to review the disability determinations of Plaintiffs

20   and class members.  42 U.S.C. § 421(c)(1).

21   130.    Pursuant to the 20 C.F.R. §§ 404.988, 404.989, 416.1488, 416.1489, grounds exist

22   to reopen these determinations.

23                              **THIRD CAUSE OF ACTION**
                     **FOR DECLARATORY AND INJUNCTIVE RELIEF FOR**
24   **Violation of the Fifth Amendment of the United States Constitution,**
     **Actionable Pursuant to 42 U.S.C. § 1983 (Due Process)**
25

26   131.    Paragraphs 1 – 130 are each re-alleged and incorporated as if fully set forth herein.

27

28

132. Defendant's failure to provide Plaintiffs and class members with a complete and thorough consultative examination by a competent consultative examiner violates Plaintiffs' and class members' Fifth Amendment rights to procedural due process.

133. Defendant's failure to notify Plaintiffs and class members of the disqualification of Dr. Chen violates Plaintiffs' and class members' Fifth Amendment rights to procedural due process.

134. Defendant's failure to provide Plaintiffs and class members with copies of their CE report violates Plaintiffs' and class members' Fifth Amendment rights to procedural due process.

135. As a result, Plaintiffs and members of the class were denied an opportunity for a fair and adequate notice and hearing.

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully request that the Court:

a. Assume jurisdiction over this matter;

b. Certify this action as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure;

c. Declare that Defendant's policies and practices, as set forth above, violate the SSA's obligations pursuant to the Social Security Act, its implementing regulations and the Due Process Clause of the United States Constitution;

d. Preliminarily and permanently enjoin Defendant from relying on consultative exam reports from Dr. Frank Chen to terminate or deny SSI and/or SSDI benefits;

e. Preliminarily and permanently enjoin Defendant to reopen all prior determinations terminating or denying SSI and/or SSDI benefits that relied, in whole or in part, on a consultative exam report from Dr. Frank Chen, and to offer Plaintiffs the opportunity for a new consultative examination from a well-qualified clinician;

f. Preliminarily and permanently enjoin Defendant to provide notice to individuals whose claims for SSI and/or SSDI benefits were terminated or denied, in whole or in part, on a consultative exam report from Dr. Frank Chen;

1    g. Award Plaintiffs costs, disbursements, and reasonable attorneys' fees, including,

2      without limitation, the costs and fees authorized by 28 U.S.C. § 2412;

3    h. Grant Plaintiffs such other and further relief as the Court may find just, proper and

4      equitable.

Dated: February 9, 2015    By: /s/ William L. Stern

                William L. Stern

              **MORRISON & FOERSTER LLP**
              425 Market Street
              San Francisco, California 94105-2482
              WStern@mofo.com
              T: (415) 268-7000

              *Attorney for Plaintiffs*

sf-3484497