UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN HART, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No.  15-cv-00623-JST<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: ECF No. 18 |

This is a putative class action about the evidence that Administrative Law Judges ("ALJ's") may properly consider in determining whether claimants are entitled to disability benefits from the Social Security Administration ("SSA").  Plaintiffs have sued Defendant Carolyn W. Colvin in her capacity as Acting Commissioner of Social Security, ECF No. 1, challenging the SSA's alleged reliance on consultative examinations (CEs) performed by Dr. Frank Chen, a physician who is now disqualified, in denying or terminating disability benefits.  Id. at ¶ 1.  Plaintiffs seek declaratory and injunctive relief requiring the SSA to cease relying on Dr. Chen's reports and requiring it to reopen any benefits determination that relied, at least in part, on a report prepared by Dr. Chen.  Id. at 23-24.

Defendant now moves to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  ECF No. 18.  She contends that the Court cannot exercise jurisdiction over this case pursuant to 42 U.S.C. § 405(g) because Plaintiffs have failed to exhaust their administrative remedies through the Social Security Administration's internal appeals process.  Plaintiffs respond that this Court should waive the exhaustion requirement of Section 405(g), because Plaintiffs' claims are collateral to their claims for benefits, administrative exhaustion would be futile, and Plaintiffs have made a colorable

1  showing of irreparable harm. ECF No. 25. This matter came for a hearing on June 25, 2015.

2  For the reasons set forth below, the Court concludes that administrative exhaustion would
be futile, and that Plaintiffs have satisfied the other requirements for waiver of the exhaustion
requirement. The Court therefore denies Defendant's motion to dismiss.

**I.   Background[1]**

To to obtain benefits based on disability under the Supplemental Security Income (SSI) program or Social Security Disability Insurance (SSDI), a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." ECF No. 1 at ¶ 2 (citing 42 U.S.C. § 423(d)(1)(A)). The regulations promulgated pursuant to the Social Security Act require that claimants provide the Social Security Administration (SSA) with "evidence from acceptable medical sources to establish whether [an individual has] a medically determinable impairment(s)." Id. at ¶ 3 (citing 20 C.F.R. § 404.1513(a)). Although the SSA administers SSI and SSDI, it contracts with state agencies, such as the Disability Determination Service Division of the California Department of Social Services (DDSD), in order to make disability determinations. Id. at ¶ 80.

Consultative examinations (CEs) are examinations performed by doctors or other medical professionals who contract with DDSD. Id. at ¶ 85. Following CEs, the examiner will send their report on a claimant to the DDSD. Id. at ¶ 87. The SSA has promulgated various guidelines regarding the standards for CEs and the consideration of CE reports. Id. at ¶¶ 88-93.

Named Plaintiffs Kevin Hart, Nina Silva-Collins, and Lee Harris all sought the award or renewal of disability benefits from the SSA. Dr. Frank Chen performed consultative examinations (CEs) on all of the Named Plaintiffs in connection with their application for award or renewal of disability benefits. Named Plaintiffs allege various deficiencies with these examinations.

Plaintiff Hart suffered from "tremendous pain and limited mobility," following a 2007 car

---

[1] For the purposes of this order, the Court accepts as true all of the well-pled factual allegations contained in Plaintiff's Complaint. ECF No. 1.

accident, as well as "diabetes and emphysema." Id. at ¶ 17. Hart was found disabled by an ALJ in April 2010. Id. at ¶ 23. In April of 2013, Hart was attacked violently, exacerbating his pre-existing pain and causing additional serious health conditions. Id. at ¶ 24-25. Hart was scheduled for a continuing disability review in 2013, and referred to Dr. Chen. Id. at ¶ 26. Dr. Chen's August 15, 2013 examination of Plaintiff Hart lasted only ten minutes. Id. at ¶¶ 28. Dr. Chen submitted a report that misidentified Hart's complaints and claimed that he had performed tests that he had not actually performed during his examination. Id. at ¶¶ 29-32. The SSA relied on Dr. Chen's evaluation in terminating Hart's benefits on September 11, 2013. Id. at ¶ 34. Following a subsequent hearing, a Disability Hearing Officer concluded in a March 17, 2014 order that Hart's physical impairments had "medically improved" and that Hart was "able to do medium work activities" based upon Dr. Chen's report. Id. at ¶ 35. The Officer found Dr. Chen's report "more reasonable as consistent and supported by medical evidence" than another doctor's report that had been submitted by Hart. Id. at ¶ 35.

Plaintiff Silva-Collins suffers from "severe, chronic anemia caused by menorrhagia (abnormally heavy and prolonged menstrual bleeding), lumbar degenerative disc disease, depression, anxiety, asthma, and hypertension." Id. at ¶ 38. Silva-Collins was examined by Dr. Chen on August 10, 2013, after the ALJ determined that a CE was necessary to evaluate her claims. Id. at ¶ 41. Dr. Chen's examination of Silva-Collins lasted for only ten minutes. Id. at ¶ 42. Dr. Chen diagnosed Silva-Collins with "[l]ow back pain, possibly due to obesity," and "obesity." Id. at ¶ 44. Dr. Chen's report claimed that Dr. Chen had completed various strength and range of motion tests that he never actually performed. Id. at ¶ 45. "Dr. Chen did not ask Ms. Silva-Collins any questions about her menorrhagia, anemia, or other blood issues, or the effect that these chronic conditions had on her physical capabilities." Id. at ¶ 43. On January 8, 2014, the ALJ denied Silva-Collins' claim for benefits, giving "great weight to the opinion of consultative examiner Dr. Chen" and observing that Dr. Chen's "examination is the most thorough and detailed in the record, and well supported by the medical evidence as a whole." Id. at ¶ 47.

Plaintiff Harris suffers from debilitating lower back, leg, and foot pain following an April 2005 car accident. Id. at ¶ 53. Following his August 2011 application for SSI benefits, the SSA

3

referred Plaintiff Harris to Dr. Chen for a CE, which was conducted on October 28, 2011. Id. at ¶ 56. The examination lasted twelve minutes. Id. at ¶ 58. Dr. Chen instructed Harris to stand without his cane and Harris responded that he could not do so without support. Id. at ¶ 60. Nonetheless, "Dr. Chen concluded that Mr. Harris did not need to use his cane to walk short distances, even though he had never seen Mr. Harris stand without it." Id. at ¶ 63. Harris's application was denied on November 18, 2011 and again on reconsideration on May 16, 2012. Id. at ¶ 64. Although Harris succeeded in obtaining a hearing before an ALJ in April 2013, the ALJ denied the claim, stating that "the examination by Dr. Chen indicates far greater functionality than alleged by the claimant." Id. at ¶ 65. The ALJ gave "the greatest weight to Dr. Chen's opinion because he personally examined the claimant." Id.

Unbeknownst to claimants who were being referred to Dr. Chen for CEs during this time, DDSD had sent Dr. Chen a Corrective Action letter regarding deficiencies in his CEs in September 2011. Id. at ¶ 74. DDSD sent Dr. Chen a second letter on October 14, 2013, identifying continuing issues with the quality of his reports. Id. at ¶ 75. On December 30, 2013, following years of complaints from applicants and their representatives regarding Dr. Chen's practices, the DDSD removed Dr. Chen from the CE panel, citing Dr. Chen's "unprofessional manner and failure to adequately correct deficiencies in his CE reports." Id. at ¶ 76. Although Dr. Chen's reports were a part of the record in all of Plaintiffs' ongoing challenges to their denial of disability benefits, Plaintiffs were not provided with notice that Dr. Chen had been removed from the CE panel. Id. at ¶ 77.

Plaintiffs ask that this Court assume jurisdiction over this case, certify a class action, and grant declaratory and injunctive relief: 1) declaring that Defendant's reliance on Dr. Chen's CE reports "violate[s] the SSA's obligations pursuant to the Social Security Act, its implementing regulations and the Due Process Clause of the United States Constitution"; 2) enjoining Defendant from relying on CE reports prepared by Dr. Chen to terminate or deny disability benefits; 3) requiring Defendant to reopen prior determinations terminating or denying benefits in reliance on CE reports prepared by Dr. Chen; and 4) requiring Defendant to provide notice to all individuals whose benefits were terminated or denied in reliance on a CE report prepared by Dr.

4

Chen. Id. at 23-24.

## II. Legal Standard

The Social Security Act permits claimants to challenge the denial of social security benefits in a federal District Court after a "final decision" is rendered by the Commissioner. 42 U.S.C. § 405(g). Plaintiffs filing a civil action generally must meet two requirements: presentment and exhaustion. Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir. 1993). Presentment of a benefits claim to the Commissioner is a jurisdictional requirement, but exhaustion is not; the exhaustion requirement may therefore be waived by the SSA or the courts. Id. (citing Matthews v. Eldridge, 424 U.S. 319, 330 (1975)).

Defendant acknowledges that Plaintiffs have satisfied the jurisdictional requirement by presenting their claims to the Commissioner. Plaintiffs concede that they have not exhausted their claims through the administrative review process, but urge the Court to waive the exhaustion requirement under the circumstances alleged in the complaint.

The exhaustion requirement embodies the policy of deferring to the SSA "in the first instance, both because of its superior 'expertise in administering its own regulations,' and because it is generally more efficient to allow the agency, if it can, to resolve disputes concerning the entitlement programs it administers." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir. 1989) (quoting Bowen v. City of New York, 476 U.S. 467, 485 (1986)). Nevertheless, "cases may arise where a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is inappropriate." Eldridge, 424 U.S. at 330.

A court may waive the exhaustion requirement where the claim to be reviewed is "(1) collateral to a substantive claim of entitlement (collaterality), (2) colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility)." Briggs v. Sullivan, 886 F.2d 1132, 1139 (9th Cir.1989) (citing Eldridge, 424 U.S. at 330) (internal quotations omitted). All three elements must be met. See Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1115–16 (9th Cir. 2003). However, "[t]he ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the Eldridge factors, but

5

should also be guided by the policies underlying the exhaustion requirement." City of New York, 476 U.S. at 484.

**III.     Analysis**

**A.     Irreparability**

A plaintiff satisfies the irreparability requirement by making a claim that is "colorable in its showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy." Briggs, 886 F.2d at 1139. A claimant states such a colorable claim where they allege that "because of [their] physical condition and dependency upon the disability benefits, an erroneous termination would damage [them] in a way not recompensable through retroactive payments." Eldridge, 424 U.S. at 331. The Ninth Circuit has held that back payment of benefits cannot "erase either the experience or the entire effect of several months without food, shelter or other necessities." Briggs, 886 F.2d at 1140. Accordingly, courts have found irreparability where a plaintiff has pled that they were living with their elderly mother while awaiting approval of their SSI application, because they had no other income, Johnson, 2 F.3d at 920, or alleged reliance on General Assistance and food stamps, a lack of medical insurance, and homelessness. Kildare, 325 F.3d at 1083.

The Court concludes that Plaintiffs have sufficiently demonstrated that their alleged injuries are irreparable.[2] Each Named Plaintiff has pled facts indicating the denial of benefits represents a grave hardship to him or her for which back payments would not fully compensate. The complaint states that Plaintiff Hart currently lives with his elderly mother and struggled to afford basic needs even while he was receiving SSI and SSDI benefits, ECF No. 1 at ¶ 37, Plaintiff Silva-Collins lives with her father and requires SSI in order to afford necessary medical supplies, id. at ¶ 52, and Plaintiff Harris is currently dependent on family support to afford food and other basic life necessities. Id. at ¶ 70.

Plaintiffs' claims are colorable in their showing that refusal to the relief sought will cause an injury which retroactive payments cannot remedy.

---

[2] Defendant does not argue that Plaintiffs have failed to make a colorable showing of irreparability.

**B.     Collaterality**

"A plaintiff's claim is collateral if it is not essentially a claim for benefits." Johnson, 2 F.3d at 921. Plaintiffs argue that they are not asking the Court to award or reinstate benefits as a result of this litigation, but instead ask for injunctive relief that would require the SSA to reopen proceedings that erroneously relied on Dr. Chen's reports to terminate or deny benefits. ECF No. 25 at 8. Defendant contends that, despite Plaintiffs' "artful attempt to frame their claims as a challenge to an alleged SSA 'policy and practice,'" ECF No. 18 at 15, Plaintiffs in fact seek to advance their claims for benefits by challenging Dr. Chen's reports. Id. at 16. Defendant finds it significant that the Complaint challenges Defendant's "policy and practice of relying on Dr. Chen's defective CE reports *in denying or terminating benefits*," and argues that this demonstrates that "Plaintiffs do not challenge a 'policy' but are, instead, challenging a specific outcome– denial of benefits– in cases where Dr. Chen prepared reports." ECF No. 27 at 7 (quoting ECF No. 1 at ¶ 7).

The fact that Plaintiffs challenge the SSA's use of Dr. Chen's reports in cases that resulted in denials of claims for benefits does not convert Plaintiffs' challenge into a claim for benefits. In City of New York, the Supreme Court held that a challenge to the SSA's presumption that mentally disabled applicants were qualified to do unskilled work was collateral to a claim for benefits. 476 U.S. 467. The Court reasoned that "[t]he class members neither sought nor were awarded benefits in the District Court, but rather challenged the Secretary's failure to follow the applicable regulations." Id. at 483. The Court reached this conclusion even though Plaintiffs challenged the SSA's use of a blanket presumption that "led to routine *denials* of benefits to eligible claimants." Id. at 473 (emphasis added). Likewise, in Johnson, the Ninth Circuit held that plaintiffs' challenge to "the Secretary's policy of treating as income all in-kind loans" was collateral to their claims for benefits. 2 F.3d at 921. The Court observed that plaintiffs had "sought the invalidation of a rule used to determine eligibility for benefits rather than the denial of benefits in a particular case." Id. The Johnson court acknowledged that a favorable decision for plaintiffs would require the Secretary to "readjudicate those claims that were *denied* under the in-kind policy." Id. (emphasis added). But, the court concluded that, while adjudication would

7

1   mean that "[s]ome claimants will receive benefits they were once denied," other claimants would
2   continue to be denied benefits as "[t]hey would not be entitled to benefits under either policy,"
3   demonstrating plaintiffs' claims were collateral.  Id.

4       Plaintiffs' claims in this case are collateral to their claims for benefits because they do not
5   challenge the outcome of the SSA proceedings—the denial or termination of their SSI or SSDI
6   benefits.  Rather, they challenge the process by which that outcome was reached—in reliance on
7   Dr. Chen's CE reports.  It is of no moment to the analysis that, should Plaintiffs be granted the
8   relief they seek, the outcome of their disability claims might ultimately prove different.  This was
9   also true of the Plaintiffs in City of New York and Johnson, who alleged that procedural
10  deficiencies occasioned the wrongful denial of their claims for benefits.  All that Plaintiffs seek
11  from this Court is relief mandating that the SSA not use Dr. Chen's CE reports in the process of
12  evaluating Plaintiffs' disability claims.  In the event that Plaintiffs are entitled to such relief at the
13  close of the litigation, their ultimate entitlement to benefits will still be unknown and left to be
14  resolved by the SSA.

15      Defendant also contends that Plaintiffs' claims are not collateral to their claims for benefits
16  because there is no SSA-wide "policy" to rely on Dr. Chen's reports in resolving disability claims.
17  Defendant asserts that SSA adjudicators resolve disability claims on a case-by-case basis, and
18  "must decide the degree of weight, if any, to afford that report in determining whether the claimant
19  is disabled."  ECF No. 27 at 5.  Therefore, "[a]pplication of SSA's regulations in a particular case
20  *may* result in a degree of 'reliance' [on Dr. Chen's reports] by the adjudicator, or it may not, all
21  depending on the particular circumstances of the case."  Id.

22      Defendant argues that this case resembles Kildare, where the Ninth Circuit concluded that
23  plaintiffs' claims were not collateral to claims for benefits when plaintiffs had alleged "a series of
24  claimed irregularities in individual cases that [were] entirely dependent on the [plaintiffs']
25  underlying claims for benefits."  325 F.3d at 1083.  Although the plaintiffs in that case had used
26  terms such as "policy," "practice," and "systematic" throughout their complaint, the Kildare court
27  observed that the plaintiffs had "admitted in their brief that they cannot point to any specific
28  policy, directive, or order" that had resulted in the alleged erroneous denial of plaintiffs' claims.

Id. But Plaintiffs in this case do not merely allege "idiosyncratic individual errors," as was the case in Kildare, id.; they point to an SSA-wide policy to consider Dr. Chen's reports in resolving disability claims, even in the wake of widespread allegations of deficiencies in the quality of his examinations.

Defendant's reply brief points to a March 16, 2015,[3] letter from the Chief Administrative Law Judge for the SSA to the Acting Chief Administrative Law Judge for San Francisco providing guidance to adjudicators regarding Dr. Chen and instructing them to "consider" Dr. Chen's removal from the panel in "determining the weight, if any, to which" Dr. Chen's CE is entitled. ECF No. 27-2 at 2-3. Defendant offers this letter in an attempt to show that the SSA is aware of the serious issues with Dr. Chen's CE reports and has instructed its adjudicators to factor these concerns into the case-by-case review of Plaintiffs' disability claims. But this letter only underscores the existence of an SSA-wide policy regarding Dr. Chen, authorizing adjudicators to continue to "consider" his CE reports following his removal from the CE panel.[4]

Plaintiffs do not seek an award of benefits from this Court. Instead, Plaintiffs seek injunctive relief mandating that the SSA cannot rely on Dr. Chen's reports in resolving disability claims going forward and requiring the SSA to reopen terminations or denials of disability claims that relied on CEs performed by Dr. Chen. Therefore, Plaintiffs' claims challenge a policy and are collateral to their claims for benefits.

### C. Futility

The Ninth Circuit has held that a claimant can demonstrate futility by showing that "[r]equiring him to exhaust administrative remedies would not serve the policies underlying exhaustion." Briggs, 886 F.2d at 1140 (quoting Cassim v. Bowen, 824 F.2d 791, 795 (9th Cir. 1987)). For instance, "[w]hen the agency applies a 'systemwide policy' that is 'inconsistent in critically important ways with established regulations,' nothing is gained 'from permitting the

---

[3] The complaint in this case was filed February 9, 2015.
[4] Defendant submitted this letter as evidence for the first time in connection with her reply brief. The Court generally does not consider new evidence presented for the first time on reply. In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1150 (C.D. Cal. 2007). The Court will consider the letter in this instance, however, because no prejudice to the Plaintiffs will result.

compilation of a detailed factual record, or from agency expertise.'" Johnson, 2 F.3d at 922 (quoting City of New York, 476 U.S. at 484). A Court's conclusion that it is "unlikely that an individual claimant could have succeeded in having the Secretary's policy overturned or his benefits restored through the administrative process" also supports a finding of futility, as in such a case "[r]equiring each individual to exhaust his administrative remedies would result in a considerable waste of judicial resources." Id. In contrast, when alleged "errors require interpretation of the regulations and vary with each Appellant, the errors must be determined in the context of individual disability proceeding and require development of individual factual records." Kildare, 325 F.3d at 1084.

Plaintiffs argue that exhaustion would be futile as "a more fully developed factual record, or agency expertise" would not assist the Court in resolving the purely legal issue of whether continued reliance on Dr. Chen's CE reports violates SSA's legal obligations. ECF No. 25 at 13. Defendant counters that the extent to which the adjudicator relied on Dr. Chen's report varies depending on the claimant, necessitating the development of an individualized factual record. Defendant also argues that administrative exhaustion would not be futile because individual Plaintiffs could prevail on administrative appeal of their denial or termination of benefits. Defendant states that "SSA's review process is capable of vacating any instances of improper reliance, ordering new consultative examinations, or awarding benefits to meritorious claimants." ECF No. 27 at 9.

Defendant attempts to bolster her argument that administrative exhaustion would not be futile by noting that, following the filing of the complaint in this case, the ALJ in Hart's administrative review provided Hart "with a new consultative examination from an internist other than Dr. Chen." ECF No. 18 at 17. Defendant argues that "Plaintiff Hart cannot plausibly argue that there is 'nothing to be gained' from administrative exhaustion when he has received the very thing he asked this Court to order." Id. Defendant has also notified the Court that the Appeals Council in Plaintiff Silva-Collins internal appeal has recently remanded her case back to the ALJ

for further proceedings.[5] The Appeals Council reasoned that because the ALJ had given "great weight" to Dr. Chen's CE, despite the CE's "inconsistent opinions regarding the claimant's functional limitations," the ALJ was required to engage in "additional development and evaluation of the evidence" in order to determine the claimant's residual functional capacity. ECF No. 34-1 at 8. The Appeals Council noted that the ALJ a new CE "may be particularly helpful" to evaluate Plaintiff's residual functional capacity, but did not require the ALJ to order one. Id. Although the Council noted the inconsistencies in Dr. Chen's report and his recent disqualification, the Appeals Council did not instruct the ALJ as to whether it could continue to consider Dr. Chen's CE on remand. Id. at 8-10.

Defendant argues that these orders demonstrate that Plaintiffs should be required to exhaust the administrative process before bringing this suit, as the SSA internal appeals process is aware of Dr. Chen's disqualification and likely to grant affected claimants relief. But Plaintiffs do not ask this Court merely to order the SSA to provide a new CE report in their particular cases or to instruct ALJ's to examine Dr. Chen's reports critically for potential inconsistencies; they urge that Dr. Chen's reports are so unreliable that they should not be relied upon at all in the administrative review of their disability claims. As Plaintiffs assert forcefully in their opposition, "[t]he fact that Mr. Hart, or any other Plaintiff, may receive a new CE does not ensure that the prior CE report from Dr. Chen will be excluded in the decision of whether the claimant is entitled to benefits." ECF No. 25 at 13. Indeed, even after Hart's new CE, an ALJ could decide "that the new CE report is less consistent with the evidence as a whole, including the improper and misleading CE report by Dr. Chen, and make a determination to deny or terminate benefits on that basis." Id.

Because Plaintiffs challenge an SSA-wide policy of continuing to use Dr. Chen's reports in evaluating claimants, there is nothing to be gained "from permitting the compilation of a detailed factual record." Johnson, 2 F.3d at 922. Indeed, the SSA has already informed the Court of how

---

[5] Following the hearing on this motion, Defendant submitted an unopposed administrative motion seeking to file notice of an Appeals Council order that was entered in Plaintiff Silva-Collins administrative appeal. ECF No. 34. As the motion is unopposed, the Court will consider the appeals council order.

11

it intends to respond to the issues with Dr. Chen's reports: it has directed adjudicators to "consider" Dr. Chen's removal from the CE panel "when evaluating a report from Dr. Chen and determining the weight, if any, to which it is entitled," ECF No. 27-2 at 3, and it has instructed adjudicators to "consider whether ordering an additional CE is appropriate." Id. Such remedial action falls well short of the relief requested in the Complaint. Therefore, requiring all putative class members to exhaust their administrative appeals "would result in a considerable waste of judicial resources," Johnson, 2 F.3d at 922, as Defendant has already stated the SSA's intention to continue to consider Dr. Chen's reports in appeals of disability denials or terminations.

The Court therefore concludes that requiring Plaintiffs to exhaust administrative remedies would not serve the policies underlying exhaustion. Briggs, 886 F.2d at 1140

## IV. Conclusion

Because Plaintiffs have shown that waiver of Section 405(g)'s exhaustion requirement is appropriate under the circumstances, the Court will deny Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).[6]

IT IS SO ORDERED.

Dated: July 17, 2015

                                      JON S. TIGAR
                               United States District Judge

---

[6] Because the Court concludes that the exhaustion requirement is properly waived as to all of Plaintiffs' causes of action, the Court need not address the parties' arguments regarding whether Plaintiffs' third cause of action for violations of due process confers subject matter jurisdiction.