UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN HART, et al.,

    Plaintiffs,

v.

CAROLYN W. COLVIN,

    Defendant.

Case No. 15-cv-00623-JST

**ORDER GRANTING CLASS CERTIFICATION**

Re: ECF No. 40

This is a putative class action about the evidence that Administrative Law Judges ("ALJs") may properly consider in determining whether claimants are entitled to disability benefits from the Social Security Administration ("SSA"). Plaintiffs have sued Defendant Carolyn W. Colvin in her capacity as Acting Commissioner of Social Security, ECF No. 1, challenging the SSA's alleged reliance on consultative examinations performed by Dr. Frank Chen, a physician who is now disqualified, in denying or terminating disability benefits. Id. ¶ 1. Plaintiffs seek declaratory and injunctive relief requiring the SSA to cease relying on Dr. Chen's reports, to reopen any benefits determination that relied, at least in part, on a report prepared by Dr. Chen, and to notify those individuals whose benefits have been denied or terminated of their right to these forms of relief. Id. at 23–24.[1]

Now before the Court is Plaintiffs' Motion for Class Certification. ECF No. 40. For the reasons set forth below, the Court will grant the motion.

I.     BACKGROUND

    A.  Factual Background

To obtain benefits based on disability under the Supplemental Security Income ("SSI") or

---

[1] Citations are to the internal pagination of the document and not to the pages assigned by the Court's electronic case filing system.

Social Security Disability Insurance ("SSDI") programs, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." ECF No. 1 ¶ 2 (citing 42 U.S.C. § 423(d)(1)(A)). SSA, which administers the SSI and SSDI programs, is required to "establish by regulation uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are under disabilities." 42 U.S.C. § 421(k)(1). The regulations promulgated pursuant to the Social Security Act require that claimants provide SSA with "evidence from acceptable medical sources to establish whether [an individual has] a medically determinable impairment(s)." ECF No. 1 ¶ 3 (citing 20 C.F.R. § 404.1513(a)). "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether [a claimant] is under a disability." 42 U.S.C. § 423(d)(5)(A).

Although SSA administers SSI and SSDI, it contracts with state agencies, such as the Disability Determination Service Division of the California Department of Social Services ("DDSD"), to make disability determinations. Id. ¶ 80. If DDSD cannot get the information it needs to make a disability determination from a claimant's own medical records, DDSD may decide to purchase a consultative examination ("CE"). 20 C.F.R. § 404.1519a. CEs are examinations performed by doctors or other medical professionals who contract with DDSD. ECF No. 1 ¶ 85. Following a CE, the examiner sends a report regarding the claimant to DDSD. Id. ¶ 87. SSA has promulgated various guidelines regarding the standards for CEs and the consideration of CE reports. Id. ¶¶ 88–93. In particular, SSA regulations require that evidence used in making disability determinations, such as CE reports, must come from "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 404.1519(g). "Acceptable medical sources" include "[l]icensed physician[s]." Id. §§ 404.1513(a)(1), 416.913(a)(1).

SSA regulations require adjudicators to "always consider" CE reports along with the rest of the relevant evidence in making a disability determination. Id. §§ 404.1527(b), 416.927(b); see

also ECF No. 46 at 3. "Regardless of its source, [SSA adjudicators] will evaluate every medical opinion," including every CE, the adjudicator receives in light of multiple factors to "determine[e] the weight," if any, the opinion should be given. 20 C.F.R. §§ 404.1527(c)(2), 416.927(b). Even after an examiner has been disqualified, SSA regulations permit adjudicators to rely on existing CE reports prepared by the disqualified examiner. ECF No. 1 at ¶ 99 (citing 20 C.F.R. §§ 404.1503, 416.903a ("We will not use in our program any individual or entity, except to provide existing medical evidence, who is currently excluded, suspended, or otherwise barred from participation in . . . any other Federal or Federally-assisted program.")).

Named Plaintiffs Kevin Hart, Nina Silva-Collins, and Lee Harris all sought the award or renewal of disability benefits from SSA. Dr. Frank Chen performed CEs on all of the Named Plaintiffs in connection with their applications for award or renewal of disability benefits. Named Plaintiffs allege various deficiencies with these examinations.

Plaintiff Hart suffered from "tremendous pain and limited mobility," following a 2007 car accident, as well as "diabetes and emphysema." Id. ¶ 17. Hart was found disabled by an ALJ in April 2010. Id. ¶ 23. In April of 2013, Hart was attacked violently, exacerbating his pre-existing pain and causing additional serious health conditions. Id. ¶ 24–25. Hart was scheduled for a continuing disability review in 2013 and referred to Dr. Chen. Id. ¶ 26. Dr. Chen's August 15, 2013 examination of Plaintiff Hart lasted only ten minutes. Id. ¶ 28. Dr. Chen submitted a report that misidentified Hart's complaints and claimed that he had performed tests that he had not actually performed during his examination. Id. ¶¶ 29–32. SSA relied on Dr. Chen's evaluation in terminating Hart's benefits on September 11, 2013. Id. ¶ 34. Following a subsequent hearing, a Disability Hearing Officer concluded in a March 17, 2014 order that Hart's physical impairments had "medically improved" and that Hart was "able to do medium work activities" based upon Dr. Chen's report. Id. ¶ 35. The Officer found Dr. Chen's report "more reasonable as consistent and supported by medical evidence" than another doctor's report that had been submitted by Hart. Id.

Plaintiff Silva-Collins suffers from "severe, chronic anemia caused by menorrhagia (abnormally heavy and prolonged menstrual bleeding), lumbar degenerative disc disease,

depression, anxiety, asthma, and hypertension." Id. ¶ 38. Silva-Collins was examined by Dr. Chen on August 10, 2013, after an ALJ determined that a CE was necessary to evaluate her claims. Id. ¶ 41. Dr. Chen's examination of Silva-Collins lasted only ten minutes. Id. ¶ 42. Dr. Chen diagnosed Silva-Collins with "[l]ow back pain, possibly due to obesity," and "obesity." Id. ¶ 44. Dr. Chen's report claimed that he had completed various strength and range of motion tests that he never actually performed. Id. ¶ 45. "Dr. Chen did not ask Ms. Silva-Collins any questions about her menorrhagia, anemia, or other blood issues, or the effect that these chronic conditions had on her physical capabilities." Id. ¶ 43. On January 8, 2014, the ALJ denied Silva-Collins' claim for benefits, giving "great weight to the opinion of consultative examiner Dr. Chen" and observing that Dr. Chen's "examination is the most thorough and detailed in the record, and well supported by the medical evidence as a whole." Id. ¶ 47.

Plaintiff Harris suffers from debilitating lower back, leg, and foot pain caused by an April 2005 car accident. Id. ¶ 53. Following his August 2011 application for SSI benefits, SSA referred Plaintiff Harris to Dr. Chen for a CE, which was conducted on October 28, 2011. Id. ¶ 56. The examination lasted twelve minutes. Id. ¶ 58. Dr. Chen instructed Harris to stand without his cane, and Harris responded that he could not do so without support. Id. ¶ 60. Nonetheless, "Dr. Chen concluded that Mr. Harris did not need to use his cane to walk short distances, even though he had never seen Mr. Harris stand without [the cane]." Id. ¶ 63. Harris's application was denied on November 18, 2011 and denied again upon reconsideration on May 16, 2012. Id. ¶ 64. Although Harris succeeded in obtaining a hearing before an ALJ in April 2013, the ALJ denied Harris' claim, stating that "the examination by Dr. Chen indicates far greater functionality than alleged by the claimant." Id. ¶ 65. The ALJ gave "the greatest weight to Dr. Chen's opinion because he personally examined the claimant." Id.

Unbeknownst to claimants who were being referred to Dr. Chen for CEs during this time, DDSD had sent Dr. Chen a Corrective Action letter regarding deficiencies in his CEs in September 2011. Id. ¶ 74. DDSD sent Dr. Chen a second letter on October 14, 2013, identifying continuing issues with the quality of his reports, the lack of thoroughness of his examinations, and

his unprofessional manner towards applicants. Id. ¶ 75. On December 30, 2013, following years of complaints from applicants and their representatives regarding Dr. Chen's practices, DDSD removed Dr. Chen from the CE panel, citing Dr. Chen's "unprofessional manner and failure to adequately correct deficiencies in his CE reports." Id. ¶ 76. Although Dr. Chen's reports were a part of the record in all of Plaintiffs' ongoing challenges to their denial of disability benefits, Plaintiffs were not provided with notice that Dr. Chen had been removed from the CE panel. Id. ¶ 77; see also Defendant's Answer to Class Action Complaint ("Answer"), ECF No. 38 ¶ 100 ("SSA admits that there is no regulation or rule directing SSA to provide applicants whose benefits have been denied or terminated notice that the consultative examiner in their case has been removed from the applicable CE panel.").

**B.     Procedural Background**

On February 9, 2015, Plaintiffs filed a Complaint, asking the Court to grant declaratory and injunctive relief: 1) declaring that Defendant's reliance on Dr. Chen's CE reports "violate[s] the SSA's obligations pursuant to the Social Security Act, its implementing regulations and the Due Process Clause of the United States Constitution;" 2) enjoining Defendant from relying on CE reports prepared by Dr. Chen to terminate or deny disability benefits; 3) requiring Defendant to reopen prior determinations terminating or denying benefits in reliance on CE reports prepared by Dr. Chen; and 4) requiring Defendant to provide notice to all individuals whose benefits were terminated or denied in reliance on a CE report prepared by Dr. Chen of their right to these forms of relief. ECF No. 1 at 23–24. On April 20, 2015, Defendant filed a motion to dismiss for lack of subject matter jurisdiction, contending that the Court could not exercise jurisdiction over this case pursuant to 42 U.S.C. § 405(g)[2] because Plaintiffs have failed to exhaust their administrative remedies through the SSA's internal appeals process. ECF No. 18. On July 17, 2015, the Court denied Defendant's motion to dismiss, concluding that administrative exhaustion would be futile

---

[2] 42 U.S.C. § 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."

1  and that Plaintiffs had satisfied the other requirements for waiver of the exhaustion requirement.
2  ECF No. 36.
3       On July 31, 2015, Defendant filed her Answer to the Complaint.  ECF No. 38.  On August
4  6, 2015, Plaintiffs filed a motion for class certification, seeking to certify a class of "[a]ll persons
5  whose SSI or SSDI benefits were either denied or terminated and for whom a consultative
6  examination was prepared by Dr. Frank Chen," ECF No. 40 at 9, which motion the Court now
7  considers.

## II. JURISDICTION

As the Court previously determined, ECF No. 36, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## III. LEGAL STANDARD

Class certification under Rule 23 is a two-step process.  First, Plaintiff must demonstrate that the numerosity, commonality, typicality, and adequacy requirements of 23(a) are met.  "One or more members of a class may sue or be sued as representative parties on behalf of all members only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v. Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal–Mart Stores, Inc. v. Dukes, ––– U.S. ––––, 131 S.Ct. 2541, 2551 (2011)).  In addition, "[w]hile it is not an enumerated requirement of Rule 23, courts have recognized that "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  Vietnam Veterans of Am. v. C.I.A., 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting DeBremaecker v. Short, 433 F.2d 733, 734 (5th Cir. 1970)).[3]

Second, a plaintiff must also establish that one of the bases for certification in Rule 23(b) is

---

[3] Defendant does not dispute that the proposed class is ascertainable.

met. Here, Plaintiff invokes Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## IV. ANALYSIS

### A. Rule 23(a) requirements

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members." In re Facebook, Inc., PPC Advertising Litig., 282 F.R.D. 446, 452 (N.D. Cal. 2012).

Here, Plaintiffs argue that the proposed class is sufficiently numerous because "SSA has admitted there are at least 325 claimants in the proposed class." ECF No. 40 at 9 (citing letter from the Chief Administrative Law Judge, Debra Bice, to the Acting Chief Administrative Law Judge for San Francisco, John Rolph, stating, "[w]e have identified 325 pending cases at the hearing level with medical evidence from Dr. Chen."). Plaintiffs further argue that "[t]he 325 claimants whose cases are *currently* pending *at the hearing level* are a small minority of putative class members, as the majority of claimants do not reach the ALJ stage and Dr. Chen has been submitting CE reports for many years." Id. at 10 (emphasis in original). As a result, "[i]t can be reasonably inferred that the proposed class contains thousands of members." Id. Defendant does not dispute Plaintiffs' contentions regarding numerosity. Accordingly, the Court concludes that Plaintiffs have satisfied the numerosity requirement.

#### 2. Commonality

A Rule 23 class is certifiable only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[F]or purposes of Rule 23(a)(2) [e]ven a single [common] question will do." Wal-Mart, 131 S. Ct. at 2556 (internal quotation marks omitted). However, the common contention "must be of such a nature that it is capable of classwide resolution—which

7

means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id. at 2551. "'What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'" Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Additionally, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" which cannot merely be the suffering of "a violation of the same provision of law." Id. (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).

The Court previously determined that SSA acted according to an SSA-wide policy regarding Dr. Chen, which policy authorized adjudicators to continue to "consider" Dr. Chen's CE reports following his removal from the CE panel. ECF No. 36 at 9. In making this determination, the Court relied on a March 16, 2015 letter from the Chief Administrative Law Judge for SSA to the Acting Chief Administrative Law Judge for San Francisco, providing guidance to adjudicators regarding Dr. Chen and instructing them to "consider" Dr. Chen's removal from the CE panel in "determining the weight, if any, to which" Dr. Chen's CE is entitled. Id. (quoting ECF No. 27-2 at 2–3). The letter also instructed adjudicators that they "must consider the weight to give Dr. Chen's report in accordance with the regulations at 20 CFR 404.1527 and 416.927." ECF No. 27-2 at 3. Those regulations, in turn, provide that "[r]egardless of its source, [SSA] will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Plaintiffs claim that the SSA's regulations do not allow an ALJ to disregard an unreliable report, or question its findings, based on the fact that the individual who prepared it has been disqualified. ECF No. 40 at 6 (citing 20 C.F.R. §§ 404.1527, 416.927).[4]

Plaintiffs argue that this SSA-wide policy that requires adjudicators to consider Dr. Chen's reports raises two sets of common questions. First, the SSA-wide policy raises the question of whether requiring adjudicators to consider CE reports provided by a disqualified doctor is a

---

[4] The SSA conceded this point at the hearing on the motion.

8

violation of (1) the Social Security Act, (2) its implementing regulations, or (3) the Due Process clause of the United States Constitution. ECF No. 40 at 12. Second, the SSA-wide policy raises "common questions regarding . . . SSA's legal obligations regarding Dr. Chen, including whether the Due Process clause requires SSA to provide applicants with a copy of their CE report;[5] whether SSA had an obligation to monitor Dr. Chen; and whether SSA failed to adequately monitor Dr. Chen." Id. Simply put, Plaintiffs argue that the common question raised by all proposed class members is whether the SSA-wide policy authorizing adjudicators to consider Dr. Chen's CE reports without giving notice to claimants is legal.

In response, Defendant first argues that Plaintiffs have not established commonality because "[c]ommonality . . . does not mean merely that they have *all suffered violation of the same provision of law*." ECF No. 46 at 9 (quoting Wal-Mart, 131 S.Ct. at 2551). According to Defendant, Plaintiffs' first four purportedly common questions listed above "do just that, asking whether SSA's alleged conduct violated any of three provisions of law," and nothing more. Id. Indeed, in Wal-Mart, the Supreme Court observed that "the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once. Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." 131 S.Ct. at 2551. Id. However, unlike in Wal-Mart's hypothetical, while Plaintiffs do claim that each member of the proposed class has suffered violations of the same provisions of law, the proposed class's claims also depend on a common contention, namely that a single SSA-wide policy requiring consideration of Dr. Chen's reports injured each class member because *any* consideration of those reports, prepared by an examiner who had been subsequently disqualified, violated the Social Security Act, its implementing regulations, and the

---

[5] In this respect, Plaintiffs claim that "SSA did not provide putative class members with a copy of their CE report prior to their hearing, or notice that Dr. Chen had been disqualified." ECF No. 40 at 11. Plaintiffs also note that SSA itself "admits that there is no regulation or rule directing SSA to provide applicants whose benefits have been denied or terminated notice that the consultative examiner in their case has been removed from the applicable CE panel." Id. (quoting Answer ¶ 100).

Due Process Clause. In this way, the SSA-wide policy regarding consideration of Dr. Chen's reports is the "'glue' that hold[s] together the putative class;" either that policy "is unlawful as to every [member of the proposed class] or it is not." Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014).

Second, Defendant argues that the Supreme Court's decision in Wal-Mart forecloses class certification here because Wal-Mart found commonality lacking where the plaintiffs had only shown a "corporate policy . . . *allowing discretion* by local supervisors over employment matters." 131 S.Ct. at 2554. Defendant argues that this is "effectively identical to the practice SSA is accused of perpetrating" here, and, as a result, the Court should find that Plaintiffs have failed to allege the existence of an SSA-wide policy, which has led to an injury common to all proposed class members. ECF No. 46 at 18. This argument is unpersuasive.

In Wal-Mart, the Supreme Court reasoned that "Wal-Mart's 'policy' of *allowing discretion* by local supervisors" did not bridge the "conceptual gap" between an individual's claim and the existence of a class of persons who have suffered the same injury, such that common questions will be typical of all class members, because "demonstrating the invalidity of one manager's use of discretion will do nothing to demonstrate the invalidity of another's." 131 S.Ct. 2553–54. By contrast here, Plaintiffs argue that the SSA-wide policy of allowing discretion by individual adjudicators to determine how much weight to give to Dr. Chen's reports was unlawful precisely because giving *any* weight to Dr. Chen's reports whatsoever violates the Social Security Act, its implementing regulations, and the Due Process Clause. Wal-Mart would be a more apt comparison to this case had the Wal-Mart plaintiffs alleged a corporate policy, which allowed managers to consider some unlawful characteristic—say the sex of an employee—when making employment decisions. As it is, however, the holding in Wal-Mart simply does not apply here because the Wal-Mart plaintiffs did not allege that Wal-Mart explicitly gave its managers the discretion to consider unlawful criteria, as Plaintiffs allege here.[6]

---

[6] Moreover, as Plaintiffs note, Wal-Mart is further distinguishable because plaintiffs in Wal-Mart had only shown a "corporate policy . . . *allowing discretion* by local supervisors over employment matters," whereas SSA *requires* adjudicators to "always consider" CE reports, including CE

The Court agrees with Plaintiffs that this case is more similar to Bowen v. City of New York, 476 U.S. 467 (1986) than Wal-Mart. In Bowen, plaintiffs sued the Secretary of Health and Human Services under 42 U.S.C. § 405(g), challenging a policy of the SSA which allegedly "mandated a presumption . . . that a failure to meet or equal [certain criteria] was tantamount to a finding of ability to do at least unskilled work; that the presumption led to routine denials of benefits to eligible claimants; and that such a presumption was arbitrary, capricious, and violative of the Constitution, the Social Security Act, and the applicable regulations."[7] 476 U.S. at 473. The district court certified a class consisting of claimants residing in the State of New York who were subject to the allegedly unlawful policy and "whose applications for benefits ha[d] been denied or whose benefits ha[d] been or [would] be terminated, on the basis of defendants' determination that such persons are capable of substantial gainful activity." Id. at 475 n.6. Just as the district court found in Bowen, Plaintiffs allege here the existence of a "systemwide, unrevealed [SSA] policy that [is allegedly] inconsistent in critically important ways with established regulations." Id. at 485. The existence of such an allegedly unlawful SSA-wide policy distinguishes this case from Wal-Mart.

Third, Defendant argues that the potential members of the proposed class have not suffered the same common injury because "they have not alleged—let alone demonstrated—that reports from Dr. Chen are *uniformly* deficient across the proposed class." ECF No. 46 at 10 (emphasis in original). Defendant notes that while Dr. Chen's CE reports submitted for some Plaintiffs may be deficient, "some will be entirely competent." Id. at 8. Similarly, Defendant asserts that the adjudicators reviewing Dr. Chen's reports could have given them great weight, no weight, or some degree of weight in between. Id.

This argument misapprehends the alleged wrong in this case, which is one of process, not outcome. As the Plaintiffs put it, "[a]t its core, [this] action asks SSA to give claimants what they were previously denied—the determination of their disability claim through a fair process." ECF

---

reports submitted by Dr. Chen. ECF No. 47 at 5 (quoting Wal-Mart, 131 S.Ct. at 2254).
[7] The Bowen plaintiffs also alleged, as here, "that failure to make the policy known to claimants denied the individual plaintiffs and class members due process of law." 476 U.S. at 474.

United States District Court
Northern District of California

No. 47 at 3. In Parsons, the Ninth Circuit affirmed the district court's certification of a class of Arizona prisoners who were subject to the same allegedly unconstitutional policies of prison administrators despite the fact that the Complaint did "not allege that the care provided on any particular occasion to any particular inmate . . . was insufficient." 754 F.3d at 676. Rather, the allegedly unconstitutional policies were "of statewide and systemic application expos[ing] [the entire class of inmates] to a substantial risk of serious harm." Id. Similarly here, it is inconsequential that Plaintiffs do not allege that Dr. Chen's reports were uniformly deficient across the proposed class because Plaintiffs' alleged harm stems from an SSA-wide policy which uniformly deprived the entire class of the adequate process, which Plaintiffs assert is required by law. And just as in Parsons, determination of whether the SSA-wide policy is unlawful or not "does not require [the Court] to determine the effect of [that policy] upon any individual class member . . . or to undertake any other kind of individualized determination." Parsons, 754 F.3d at 678.

Fourth, Defendant argues that the proposed class does not meet the commonality requirement because some proposed class members "may wish to challenge Dr. Chen's physical examination findings; others may not; still other may seek to challenge them in part, but not in whole." ECF No. 46 at 13. Indeed, Defendant notes that some of Dr. Chen's reports contain favorable evidence for individual claimants, and that some potential class members may therefore wish to give greater weight to Dr. Chen's reports. According to Defendant, "[t]he removal of such a report from the file could be adverse to such a claimant's interests, and run directly contrary to his or her efforts to obtain benefits." Id. at 14.

In support of this argument, Defendant cites Mayfield v. Dalton, a case in which members of the armed services challenged the constitutionality of a Department of Defense program which collected and stored blood samples from all members of the armed forces for future DNA analysis. 109 F.3d 1423 (9th Cir. 1997). Plaintiffs sought to certify a class consisting of all active duty United States Navy and Marine Corps personnel who had been compelled to provide blood samples for the program. Id. at 1424. The district court denied class certification and the Ninth

1   Circuit affirmed that decision, relying on the fact that some class members may not have opposed
2   the DNA collection program, thereby rendering the class representatives' interests "antithetical to
3   the interests of [other] class members." Id. at 1427.  However, the Mayfield Court found that
4   "there were *undoubtedly* people among the broad class [of all United States Navy and Marine
5   Corps personnel] who did not oppose" the challenged DNA repository and "who, in fact, approved
6   of it and wished the policies fully enforced." Id. (emphasis added).  Here, by contrast, Defendant
7   merely asserts that "a significant number of potential class members *may* have no objection to
8   SSA's consideration of Dr. Chen's reports," ECF No. 46 at 15 (emphasis added), although
9   Defendant offers no evidence of class members who actually take that position.  "Mere
10  speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of
11  initial class certification." Soc. Servs. Union, Local 535, Serv. Employees Int'l Union, AFL-CIO
12  v. Santa Clara Cnty., 609 F.2d 944, 948 (9th Cir. 1979); Myers v. Jani-King of Philadelphia, Inc.
13  No. 09-1738, 2015 WL 1055700, *9–10 (E.D. Pa. Mar. 11, 2015).

14  Moreover, there may not be a conflict even if some putative class members believe that Dr.
15  Chen's report in their individual cases was favorable to them.  While the question of remedy is not
16  currently before the Court, there is no reason why individual class members could not elect either
17  to waive the right to have their claims redetermined or to proceed on an administrative record that
18  included a report from Dr. Chen.  The district court in Bowen appears to have provided a similar
19  remedy when it ordered the SSA "to notify class members that their claims had been reopened,
20  and to inform class members with an appeal pending before an ALJ that such claimants had the
21  *option* of proceeding with their appeals upon the existing record rather than with the
22  administrative reopening of their case." Bowen, 476 U.S. at 476 n.7 (emphasis added).

23  In short, because Defendant has not shown that a realistic possibility of antagonism exists
24  between certain members of the proposed class and the Named Plaintiffs, the Court rejects
25  Defendant's conflict of interest argument.

26  Ultimately, each of Defendant's arguments is unconvincing.  The Court concludes that
27  Plaintiffs have satisfied their burden of showing that there exists questions of law or fact common
28

13

to the proposed class members and that determination of the truth or falsity of these common questions "will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 131 at 2551.  In particular, Plaintiffs' claim asks the Court to determine whether the SSA-wide policy instructing adjudicators to continue to "consider" Dr. Chen's CE reports following his removal from the CE panel violated the Social Security Act, its implementing regulations, and the Due Process Clause.  Resolution of these questions will not depend on the individual facts of each Plaintiff's claims because Plaintiffs argue that any consideration of Dr. Chen's report whatsoever violated the law.  Accordingly, Plaintiffs have satisfied the requirement to establish commonality.

### 3. Typicality

Defendant next challenges whether the proposed class meets the typicality requirement.  In certifying a class, courts must find that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3).  "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Parsons, 754 F.3d at 685 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the Named Plaintiffs, and whether other class members have been injured by the same course of conduct.'" Id. (quoting Hanon, 976 F.2d at 508).

"Where the challenged conduct is a policy or practice that affects all class members . . . the typicality inquiry involves comparing the injury asserted in the claims raised by the Named Plaintiffs with those of the rest of the class." Id. (quoting Armstrong v. Davis, 275 F.3d 849, 868–69 (9th Cir. 2001)).  Here, the Court has already concluded that Plaintiffs challenge an SSA-wide policy, which affects the entire class.  Plaintiffs assert that each class member's process was

14

"tainted" by this SSA-wide policy and that each class member was "injured by SSA's policy of considering CE reports prepared by Dr. Chen in resolving their disability claims." ECF No. 47 at 3. The Named Plaintiffs thus allege "the same or a similar injury as the rest of the putative class; they allege that this injury is a result of a course of conduct that is not unique to any of them; and they allege that the injury follows from the course of conduct at the center of the class claims." Id. (internal quotation marks omitted).

Defendant raises two arguments why the typicality requirement is not satisfied here. First, Defendant asserts that the Named Plaintiffs' claims are not typical of the proposed class because "[t]here is no allegation . . . that Dr. Chen *uniformly* provided deficient examination reports." ECF No. 46 at 19 (emphasis in original). The Court has already rejected this argument in the context of the commonality requirement. Plaintiffs' alleged harm stems from an SSA-wide policy which uniformly deprived the entire class of the adequate process allegedly required by law. Determination of whether the SSA-wide policy is unlawful or not "does not require [the Court] to determine the effect of [that policy] upon any individual class member . . . or to undertake any other kind of individualized determination." Parsons, 754 F.3d at 678. As a result, it simply does not matter that Plaintiffs have not alleged that Dr. Chen uniformly provided deficient CE reports.

Second, Defendant argues that the Named Plaintiffs' claims are not typical of other class members' claims because the Named Plaintiffs' claims are still pending in SSA's administrative process, whereas other proposed class members' claims are no longer pending. ECF No. 46 at 20. As a result, Defendant claims that unlike the claims of the Named Plaintiffs, the claims of potential class members with closed claims will require these class members to seek reopening, which, in turn, requires these claimants "to satisfy narrowly defined, case-specific conditions." Id. However, Defendant cites no authority for the proposition that the typicality requirement is not satisfied where certain members of the proposed class may need to satisfy additional requirements from those of the Named Plaintiffs to eventually prevail on their underlying claims. Whether certain class member may need to surmount additional obstacles to prevail on their claims for benefits is inconsequential because this lawsuit does not seek to adjudicate individual benefit

claims. ECF No. 40 at 15. Rather, Plaintiffs simply seek a determination of whether the process involved in each of their benefits determinations was unlawful. And if the Court finds in favor of the Plaintiffs on the merits, a potential remedy would be to require SSA to "reopen the [closed] decisions denying or terminating benefits, and to redetermine eligibility." Bowen, 476 U.S. at 476. The Court concludes that Plaintiffs have demonstrated typicality.

### 4. Adequacy

"The adequacy of representation requirement . . . requires that two questions be addressed: (a) do the Named Plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the Named Plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 462 (9th Cir. 2000). The requirement "'tend[s] to merge' with the commonality and typicality criteria of Rule 23(a)." Amchem Prods. v. Windsor, 521 U.S. 591, 626 n.20 (1997) (quoting Falcon, 457 U.S. at 158 n.13 (1982)). Among other functions, the requirement serves as a way to determine whether "the Named Plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Falcon, 457 U.S. at 158 n.13.

Defendant does not specifically argue that Plaintiffs and their counsel fail to meet Rule 23(a)(4)'s adequacy requirement, and the Court finds that Plaintiffs have satisfied both prongs of the requirement.

First, the Court rejects the argument, raised by Defendant with respect to the commonality requirement, that the Named Plaintiffs and their counsel will not be able to "fairly and adequately protect the interests of the class" simply because some potential class members may wish that Dr. Chen's CE report be given greater weight. While "[t]he Ninth Circuit has rejected class certification when the class representatives' 'interests would . . . have been antithetical to the interests of [other] class members," Mayfield, 109 F.3d at 1427, Defendant has not provided the Court with even a single specific example of such a conflict. Moreover, as Plaintiffs note, even assuming the existence of potential class members who would prefer that greater weight be given to Dr. Chen's report, "provision of a new CE by a competent examiner," which is what Plaintiffs

1  ultimately seek, "would not be at odds with the interests of proposed class members because . . .

2  findings that accurately reflect [these claimants'] disabilities would be captured in a new CE

3  report." ECF No. 47 at 7.

4  Second, the Named Plaintiffs have retained experienced counsel, including two nonprofit

5  organizations and a law firm, which collectively "have extensive experience in public benefits

6  law, the Social Security Act, and class-action litigation, as well as the necessary resources and

7  commitment to pursue the interests of the class vigorously." ECF No. 40 at 16. Nothing in the

8  record suggests, and Defendant does not argue, otherwise. Accordingly, Plaintiffs have satisfied

9  the adequacy requirement.

### 5. Ascertainability

"[A] class definition is sufficient if the description of the class is 'definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member.'" Vietnam Veterans of Am., 288 F.R.D. at 211 (quoting O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998)). While, as Plaintiff notes, some courts in this Circuit have held that there is no ascertainability requirement in Rule 23(b)(2) cases,[8] the Court need not address this issue because Defendant does not contest ascertainability. Even assuming that such a requirement does exist in Rule 23(b)(2) cases, Plaintiffs have persuasively argued that the proposed class is ascertainable because the proposed class is defined by two objective criteria: individuals (1) who received a CE report from Dr. Chen and (2) whose benefits were denied or terminated. ECF No. 40 at 17. As a result, the Court finds that the proposed class is ascertainable.

### B. Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to

---

[8] See, e.g., In re Yahoo Mail Litig., No. 13-cv-04980-LHK, 2015 WL 3523908, at *16 (N.D. Cal. May 26, 2015).

17

each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." Wal-Mart, 131 S.Ct. at 2557. "These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." Parsons, 754 F.3d at 688 (citing Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2011)). "That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries." Id.

Here, contrary to Defendant's assertion, ECF No. 46 at 22, Plaintiffs allege that SSA applied the same allegedly unlawful policy to each member of the proposed class. While the application of that SSA-wide policy "may not affect every member of the proposed class . . . in exactly the same way," Plaintiffs seek uniform injunctive and declaratory relief from policies that are generally applicable to the class as a whole. Parsons, 754 F.3d at 688; 7AA Charles A. Wright et al., Federal Practice and Procedure § 1775 (3d ed.) ("Rule 23(b)(2) . . . has been used extensively to challenge the enforcement and application of complex statutory schemes, such as suits involving the award or termination of benefits under the Social Security Act.").

Moreover, the relief requested by Plaintiffs—a declaration that the SSA-wide policy in question is unlawful, an injunction forbidding SSA from relying on Dr. Chen's CE reports in making disability determinations, an injunction requiring SSA to reopen all of the closed claims of proposed class members, and an injunction requiring that SSA notify all proposed class members—satisfies Rule 23(b)(2)'s requirement that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); ECF No. 1 at 23. Plaintiffs do not seek monetary damages or individual disability determinations. ECF No. 47 at 9. Contrary to Defendant's argument, ECF No. 46 at 23, the fact that a single injunction may affect different individual Plaintiffs in different ways because of the procedural posture of their individual claims does not negate the fact that a single injunction and declaratory judgment

would provide relief to each member of the class.  See Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2009) ("The fact that some class members may have suffered no injury or different injuries from the challenged practice does not prevent the class from meeting the requirements of Rule 23(b)(2)."). Indeed, the relief sought by Plaintiffs here is similar to that afforded by the district court in Bowen. 476 U.S. at 476, 476 n.7 (ordering "the Secretary to reopen the decisions denying or terminating benefits, . . . to redetermine eligibility," to notify the class members with closed cases that their claims would be reopened, and to notify class members with pending appeals that "such claimants had the option of proceeding with their appeals upon the existing record rather than the administrative reopening of their case.").

Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(b)(2).

**CONCLUSION**

The Court hereby grants Plaintiffs' motion to certify a class consisting of all persons whose SSI or SSDI benefits were either denied or terminated and for whom a consultative examination was prepared by Dr. Frank Chen.

In the joint case management statement due on November 5, 2015, the parties are ordered to propose a schedule for the remainder of the case through trial.

IT IS SO ORDERED.

Dated: October 14, 2015

_____
JON S. TIGAR
United States District Judge