UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KEVIN HART, et al.,

               Plaintiffs,

      v.

CAROLYN W. COLVIN,

               Defendant.

Case No. 15-cv-00623-JST

**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: ECF No. 75

Before the Court is Plaintiffs' unopposed Motion for Preliminary Approval of Class Action Settlement. ECF Nos. 75, 79.[1] For the reasons set forth below, the Court grants the motion.

I.    **BACKGROUND**

    A.    **Factual Background**

This is a putative class action about the evidence that Administrative Law Judges ("ALJs") may properly consider in determining whether claimants are entitled to disability benefits from the Social Security Administration ("SSA"). ECF No. 50. Named Plaintiffs Kevin Hart, Nina Silva-Collins, and Lee Harris represent a class of individuals who received a consultative examination ("CE") performed by Dr. Frank Chen, a physician who is now disqualified, in connection with their applications for award or review of disability benefits from the SSA. ECF No. 50; ECF No. 1 ¶¶ 13-15. Defendant Carolyn W. Colvin is the Acting Commissioner of Social Security.

To obtain benefits based on disability under the Supplemental Security Income ("SSI") or Social Security Disability Insurance ("SSDI") programs, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental

---

[1] On November 8, 2016, the parties filed a Notice of Amended Settlement Agreement, which is the agreement currently before the Court. The only amendment was a change in the notice by publication term of the settlement to specify the publications in which notice will be published. The change is sensible, is not material, and does not require further discussion.

United States District Court
Northern District of California

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." ECF No. 1 ¶ 2 (citing 42 U.S.C. § 423(d)(1)(A)). SSA, which administers the SSI and SSDI programs, is required to "establish by regulation uniform standards which shall be applied at all levels of determination, review, and adjudication in determining whether individuals are under disabilities." 42 U.S.C. § 421(k)(1). The regulations promulgated pursuant to the Social Security Act require that claimants provide SSA with "evidence from acceptable medical sources to establish whether [an individual has] a medically determinable impairment(s)." ECF No. 1 ¶ 3 (citing 20 C.F.R. § 404.1513(a)). "Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques . . . must be considered in reaching a conclusion as to whether [a claimant] is under a disability." 42 U.S.C. § 423(d)(5)(A).

Although SSA administers SSI and SSDI, it contracts with state agencies, such as the Disability Determination Service Division of the California Department of Social Services ("DDSD"), to make disability determinations. Id. ¶ 80. If DDSD cannot get the information it needs to make a disability determination from a claimant's own medical records, DDSD may decide to purchase a consultative examination ("CE"). 20 C.F.R. § 404.1519a. CEs are examinations performed by doctors or other medical professionals who contract with DDSD. ECF No. 1 ¶ 85. Following a CE, the examiner sends a report regarding the claimant to DDSD. Id. ¶ 87. SSA has promulgated various guidelines regarding the standards for CEs and the consideration of CE reports. Id. ¶¶ 88–93. In particular, SSA regulations require that evidence used in making disability determinations, such as CE reports, must come from "acceptable medical sources." 20 C.F.R. §§ 404.1513(a), 404.1519(g). "Acceptable medical sources" include "[l]icensed physician[s]." Id. §§ 404.1513(a)(1), 416.913(a)(1).

SSA regulations require adjudicators to "always consider" CE reports along with the rest of the relevant evidence in making a disability determination. Id. §§ 404.1527(b), 416.927(b); see also ECF No. 46 at 3. "Regardless of its source, [SSA adjudicators] will evaluate every medical opinion," including every CE, the adjudicator receives in light of multiple factors to "determine[e] the weight," if any, the opinion should be given. 20 C.F.R. §§ 404.1527(c)(2), 416.927(b). Even

United States District Court
Northern District of California

2

after an examiner has been disqualified, SSA regulations permit adjudicators to rely on existing CE reports prepared by the disqualified examiner.  ECF No. 1 at ¶ 99 (citing 20 C.F.R. §§ 404.1503, 416.903a ("We will not use in our program any individual or entity, except to provide existing medical evidence, who is currently excluded, suspended, or otherwise barred from participation in . . . any other Federal or Federally-assisted program.")).

Named Plaintiffs Kevin Hart, Nina Silva-Collins, and Lee Harris all sought the award or renewal of disability benefits from SSA.  Dr. Frank Chen performed CEs on all of the Named Plaintiffs in connection with their applications for award or renewal of disability benefits.  Named Plaintiffs allege various deficiencies with these examinations.

Plaintiff Hart suffered from "tremendous pain and limited mobility," following a 2007 car accident, as well as "diabetes and emphysema."  Id. ¶ 17.  Hart was found disabled by an ALJ in April 2010.  Id. ¶ 23.  In April of 2013, Hart was attacked violently, exacerbating his pre-existing pain and causing additional serious health conditions.  Id. ¶ 24–25.  Hart was scheduled for a continuing disability review in 2013 and referred to Dr. Chen.  Id. ¶ 26.  Dr. Chen's August 15, 2013 examination of Plaintiff Hart lasted only ten minutes.  Id. ¶ 28.  Dr. Chen submitted a report that misidentified Hart's complaints and claimed that he had performed tests that he had not actually performed during his examination.  Id. ¶¶ 29–32.  SSA relied on Dr. Chen's evaluation in terminating Hart's benefits on September 11, 2013.  Id. ¶ 34.  Following a subsequent hearing, a Disability Hearing Officer concluded in a March 17, 2014 order that Hart's physical impairments had "medically improved" and that Hart was "able to do medium work activities" based upon Dr. Chen's report.  Id. ¶ 35.  The Officer found Dr. Chen's report "more reasonable as consistent and supported by medical evidence" than another doctor's report that had been submitted by Hart.  Id.

Plaintiff Silva-Collins suffers from "severe, chronic anemia caused by menorrhagia (abnormally heavy and prolonged menstrual bleeding), lumbar degenerative disc disease, depression, anxiety, asthma, and hypertension."  Id. ¶ 38.  Silva-Collins was examined by Dr. Chen on August 10, 2013, after an ALJ determined that a CE was necessary to evaluate her claims.  Id. ¶ 41.  Dr. Chen's examination of Silva-Collins lasted only ten minutes.  Id. ¶ 42.  Dr. Chen diagnosed Silva-Collins with "[l]ow back pain, possibly due to obesity," and "obesity."  Id.

¶ 44.  Dr. Chen's report claimed that he had completed various strength and range of motion tests that he never actually performed.  Id. ¶ 45.  "Dr. Chen did not ask Ms. Silva-Collins any questions about her menorrhagia, anemia, or other blood issues, or the effect that these chronic conditions had on her physical capabilities."  Id. ¶ 43.  On January 8, 2014, the ALJ denied Silva-Collins' claim for benefits, giving "great weight to the opinion of consultative examiner Dr. Chen" and observing that Dr. Chen's "examination is the most thorough and detailed in the record, and well supported by the medical evidence as a whole."  Id. ¶ 47.

Plaintiff Harris suffers from debilitating lower back, leg, and foot pain caused by an April 2005 car accident.  Id. ¶ 53.  Following his August 2011 application for SSI benefits, SSA referred Plaintiff Harris to Dr. Chen for a CE, which was conducted on October 28, 2011.  Id. ¶ 56.  The examination lasted twelve minutes.  Id. ¶ 58.  Dr. Chen instructed Harris to stand without his cane, and Harris responded that he could not do so without support.  Id. ¶ 60.  Nonetheless, "Dr. Chen concluded that Mr. Harris did not need to use his cane to walk short distances, even though he had never seen Mr. Harris stand without [the cane]."  Id. ¶ 63.  Harris's application was denied on November 18, 2011 and denied again upon reconsideration on May 16, 2012.  Id. ¶ 64.  Although Harris succeeded in obtaining a hearing before an ALJ in April 2013, the ALJ denied Harris' claim, stating that "the examination by Dr. Chen indicates far greater functionality than alleged by the claimant."  Id. ¶ 65.  The ALJ gave "the greatest weight to Dr. Chen's opinion because he personally examined the claimant."  Id.

Unbeknownst to claimants who were being referred to Dr. Chen for CEs during this time, DDSD had sent Dr. Chen a Corrective Action letter regarding deficiencies in his CEs in September 2011.  Id. ¶ 74.  DDSD sent Dr. Chen a second letter on October 14, 2013, identifying continuing issues with the quality of his reports, the lack of thoroughness of his examinations, and his unprofessional manner towards applicants.  Id. ¶ 75.  On December 30, 2013, following years of complaints from applicants and their representatives regarding Dr. Chen's practices, DDSD removed Dr. Chen from the CE panel, citing Dr. Chen's "unprofessional manner and failure to adequately correct deficiencies in his CE reports."  Id. ¶ 76.  Although Dr. Chen's reports were a part of the record in all of Plaintiffs' ongoing challenges to their denial of disability benefits,

4

1   Plaintiffs were not provided with notice that Dr. Chen had been removed from the CE panel.  Id.

2   ¶ 77; see also Defendant's Answer to Class Action Complaint ("Answer"), ECF No. 38 ¶ 100

3   ("SSA admits that there is no regulation or rule directing SSA to provide applicants whose

4   benefits have been denied or terminated notice that the consultative examiner in their case has

5   been removed from the applicable CE panel.").

6   **B.    Procedural Background**

7   On February 9, 2015, Plaintiffs filed a Complaint, asking the Court to grant declaratory

8   and injunctive relief: 1) declaring that Defendant's reliance on Dr. Chen's CE reports "violate[s]

9   the SSA's obligations pursuant to the Social Security Act, its implementing regulations and the

10  Due Process Clause of the United States Constitution"; 2) enjoining Defendant from relying on

11  CE reports prepared by Dr. Chen to terminate or deny disability benefits; 3) requiring Defendant

12  to reopen prior determinations terminating or denying benefits in reliance on CE reports prepared

13  by Dr. Chen; and 4) requiring Defendant to provide notice to all individuals whose benefits were

14  terminated or denied in reliance on a CE report prepared by Dr. Chen of their right to these forms

15  of relief.  ECF No. 1 at 23–24.  On April 20, 2015, Defendant filed a motion to dismiss for lack of

16  subject matter jurisdiction, contending that the Court could not exercise jurisdiction over this case

17  pursuant to 42 U.S.C. § 405(g)[2] because Plaintiffs have failed to exhaust their administrative

18  remedies through the SSA's internal appeals process.  ECF No. 18.  On July 17, 2015, the Court

19  denied Defendant's motion to dismiss, concluding that administrative exhaustion would be futile

20  and that Plaintiffs had satisfied the other requirements for waiver of the exhaustion requirement.

21  ECF No. 36.

22  On July 31, 2015, Defendant filed her Answer to the Complaint.  ECF No. 38.  On August

23  6, 2015, Plaintiffs filed a motion for class certification, seeking to certify a class of "[a]ll persons

24  whose SSI or SSDI benefits were either denied or terminated and for whom a consultative

25  examination was prepared by Dr. Frank Chen," ECF No. 40 at 9.  On October 14, 2015, the Court

26

27  [2] 42 U.S.C. § 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in

28  controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."

United States District Court
Northern District of California

1    granted the motion for class certification, concluding that Plaintiffs had met the requirements of

2    Federal Rules of Civil Procedure 23(a) and 23(b)(2).  ECF No. 50.  On September 19, 2016,

3    Plaintiffs filed an unopposed motion for preliminary approval of class action settlement

4    agreement, which motion the Court now considers.  ECF No. 75.

5    II.    **CLASS CERTIFICATION**

6           **A.    Legal Standard**

7                  Class certification under Rule 23 of the Federal Rules of Civil Procedure is a two-step

8    process.  First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met:

9    numerosity, commonality, typicality, and adequacy.  "Class certification is proper only if the trial

10   court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied."  Wang v.

11   Chinese Daily News, Inc., 709 F.3d 829, 833 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v.

12   Dukes, 131 S. Ct. 2541, 2551 (2011)).

13                 Second, a plaintiff must establish that the action meets one of the bases for certification in

14   Rule 23(b). Here, because they rely on Rule 23(b)(3), Plaintiffs must establish that "questions of

15   law or fact common to class members predominate over any questions affecting only individual

16   members, and . . . [that] a class action is superior to other available methods for fairly and

17   efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

18                 The party seeking class certification bears the burden of demonstrating by a preponderance

19   of the evidence that all four requirements of Rule 23(a) and at least one of the three requirements

20   under Rule 23(b) are met.  See Wal-Mart, 131 S. Ct. at 2551.

21          **B.    Proposed Class Modification**

22                 The Court has previously certified a class "consisting of all persons whose SSI or SSDI

23   benefits were either denied or terminated and for whom a consultative examination was prepared

24   by Dr. Frank Chen."  ECF No. 50 at 19.  Solely for purposes of the proposed settlement, as agreed

25   to by the parties, Plaintiffs request that the class definition be amended to be:

26                 [A]ll persons whose SSI or SSDI benefits were either denied or terminated and for
                   whom a consultative examination was prepared by Dr. Frank Chen, and all persons
27                 who received a partially favorable decision or determination on their claim for SSI
                   or SSDI benefits and for whom a consultative examination was prepared by Dr.

28

United States District Court
Northern District of California

6

Chen.

ECF No. 76 at 5.  Plaintiffs argue that "this is not a substantive change," and merely includes in the class, in explicit terms, "individuals who did not receive an award or benefits for the full period of their application—in other words, whose benefits were 'denied or terminated' only in part."  Id.  As stated in the Court's order granting class certification, the alleged wrong in this case "is one of process, not outcome," and resolution does not "depend on the individual facts of each Plaintiff's claims because Plaintiffs argue that any consideration of Dr. Chen's report whatsoever violated the law."  ECF No. 50 at 10, 14.  Therefore, the Court concludes that Plaintiffs' requested modification is appropriate and does not affect the class's sufficiency under Rule 23.  The modification is approved.

## III.   PRELIMINARY APPROVAL

### A.   Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Courts generally employ a two-step process in evaluating a class action settlement.  First, courts make a "preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class.  See Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004).  "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."  City of Seattle, 955 F.2d at 1276.  Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (quotation omitted); see also MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed

settlement, and date of the final fairness hearing.").  Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval."  In re Tableware, 484 F. Supp. 2d at 1079 (quotation omitted).  The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").  To assess a settlement proposal, courts must balance a number of factors:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Id. at 1026 (citations omitted).  The proposed settlement must be "taken as a whole, rather than the individual component parts" in the examination for overall fairness.  Id.  Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety."  Id.

**B.     Settlement Negotiations**

On August 17, 2015, the Court referred the parties for a Settlement Conference before Magistrate Judge Maria-Elena James, scheduled for November 2015.  ECF Nos. 44-45.  The parties engaged in settlement discussions in person, by phone, and by email in the intervening months.  ECF No. 76 at 4.  The first Settlement Conference took place on November 17, 2015. ECF No. 54.  The parties subsequently had six additional Settlement Conferences with Magistrate Judge James: on December 18, 2015, April 5, 2016, April 28, 2016, May 19, 2016, July 13, 2016,

1    and July 28, 2016.  ECF Nos. 57, 62, 65, 66, 68, 71.  The parties reached an agreement on

2    September 19, 2016.  ECF No. 76.

3         **C.**      **Terms of the Settlement**

4         As described by Plaintiffs, "[t]he Settlement Agreement provides relief to class members

5    through procedural mechanisms that vary depending on the status of their claims and the amount

6    of time since their examination by Dr. Chen."  ECF No. 76 at 5.

7               **1.**      **Individuals with "Open" Claims**

8         "A class member who has an 'open' claim is an individual who received an unfavorable

9    decision or determination of their claim but, as of the date of final approval of this Settlement

10    Agreement, that decision or determination is not final."  <u>Id.</u>

11         For individuals who meet this definition, the ALJs handling their claims are required to:

12    o   Notify the individual that he or she received a CE from Dr. Chen, and that Dr. Chen's

13         reports were flawed in important ways and subject to complaints, and that he is no longer

14         allowed to perform these examinations;

15    o   Notify the individual that he or she has the option to have the report from Dr. Chen

16         excluded from consideration in the forthcoming adjudication; and

17    o   Notify the individual that the adjudicator has the discretion to consider whether ordering an

18         additional CE is appropriate.

19    ECF No. 76 at 5-6; ECF No. 76-1 at III.C.

20               **2.**      **Individuals with "Closed" Claims Who Were Examined by Dr. Chen**

21               **On or After January 1, 2011**

22         "A class member who has a 'closed' claim is an individual who received an unfavorable

23    decision or determination of their claim and, as of the date of final approval of this Settlement

24    Agreement, that decision or determination is final."  ECF No. 76 at 6; ECF No. 76-1 at III.A.

25         Due to the fact that these class members' claims are "closed," if they are eligible for relief

26    they will need to proceed through a readjudication process.  ECF No. 76 at 6.  "The person or

27    entity responsible for readjudicating these claims will reflect the level at which each claimant

28    received the unfavorable decision or determination."  <u>Id.</u>

United States District Court
Northern District of California

1    If the DDS made the final decision at issue, the proposed settlement provides that the SSA

2 will readjudicate those claims through its "Disability Processing Unit," without consideration of

3 Dr. Chen's CE report.  Id.; ECF No. 76-1 at III.A.2.a.  In addition to the omission of Dr. Chen's

4 report, the claimant will also have the opportunity to submit supplemental evidence relating to the

5 previously-adjudicated period, and receive back benefits or payments if found to have been

6 disabled for all, or any part of, the previously-adjudicated period.  Id.

7    Moreover, if the Disability Processing Unit finds that the claimant was disabled at the end

8 of the previously-adjudicated period, the claimant may use supplemental evidence or a new CE

9 ordered by the Disability Processing Unit to show that his or her disability has continued beyond

10 the previously adjudicated period, up to and including the date of readjudication.  Id.  A claimant

11 who makes the appropriate showing will receive the appropriate additional back benefits or

12 payments, and/or current benefits or payments.  Id.

13    If an ALJ made the final decision at issue, a new hearing will be scheduled for

14 reconsideration of the claim without consideration of Dr. Chen's report.  ECF No. 76 at 7; ECF

15 No. 76-1 at III.A.2.b.  A claimant in this category also has the opportunity to submit supplemental

16 evidence relating to the previously-adjudicated period, the ALJ can order a new CE within his or

17 her discretion, and the claimant will receive back benefits or payments if found to have been

18 disabled for all, or any part of, the previously-adjudicated period.  Id.  Furthermore, if the

19 Disability Processing Unit finds that the claimant was disabled at the end of the previously-

20 adjudicated period, the claimant can show that his or her disability has continued beyond the

21 previously adjudicated period, up to and including the date of the readjudication.  Id. Then, again,

22 the claimant may use supplemental evidence and the ALJ can order a new CE in the exercise of

23 his or her discretion.  Id.  If the claimant can make such a demonstration, he or she will receive the

24 appropriate additional back benefits or payments, and/or current benefits or payments.  Id.

25    If class members in this category requested review by the Appeals Council or if the

26 Appeals Council took review on its own motion, their case will be remanded, and they will have a

27 new hearing with the same rights described above.  Id.; ECF No. 76-1 at III.A.2.c.

28    **3.    Individuals With "Closed" Claims Who Were Examined by Dr. Chen**

**Between January 1, 2007 and December 31, 2010**

"A class member who has a 'closed' claim, and who was examined by Dr. Chen between January 1, 2007, and December 31, 2010, will be invited by SSA to apply for SSI or DIB benefits, or both, by timely returning a claim form, indicating on the form whether he or she is currently disabled, and proceeding to file a new application within the applicable timeframe." ECF No. 76; ECF No. 76-1 at III.B.2. If the claimant is determined to be disabled upon adjudication of his or her current application, he or she will then be entitled to a "lookback assessment" for the previously-adjudicated period for which he or she were denied benefits. Id. The Disability Processing Unit will perform the lookback assessments based on the record without considering Dr. Chen's report. Again, the claimants are allowed to submit any relevant supplemental evidence. Id.; ECF No. 76-1 at III.B.2.b. A finding of disability during the previously-adjudicated period will entitle the claimant to the appropriate award of back benefits or payments. ECF No. 76 at 8.

### 4. Individual in "Current Pay Status"

Individuals in "current pay status" are currently receiving benefits, despite a past denial (or partial denial) of a claim for benefits that involved an examination by Dr. Chen. Id. "An individual who was already in 'current pay status' as of October 14, 2015—the date the Court granted class certification—will not be eligible for relief." Id.

### 5. Individuals With Claims Where ALJ Explicitly Afforded No Weight to Dr. Chen's Report

"If SSA reviews the prior ALJ decision and determines that Dr. Chen's CE report was explicitly afforded no weight in the analysis, that individual will not be eligible for another review of his or her claim." ECF No. 76 at 8; ECF No. 76-1 at III.A.2.b; III.A.2.c.

### 6. Individuals With "Closed" Claims Who Appealed to Federal Court

For claimants eligible for relief who appealed their final decision to a federal court pursuant to 42 U.S.C. §§ 405(g) or 1383(c)(3) prior to the date of final approval and have a pending federal court case, "SSA will file a notice of non-opposition in response to a timely motion for remand to the agency for further proceedings if the claimant wishes to be eligible for

1   consideration for such relief." ECF No. 76 at 8; ECF No. 76-1 at III.A.2.d.  If a claimant is

2   eligible for relief but his or her "federal court case has resulted in a final judgment affirming the

3   final decision of the Commissioner, SSA will file a notice of non-opposition in response to a

4   timely 60(b)(6) motion for remand to the agency for further proceedings if the claimant wishes to

5   be eligible for consideration for such relief." ECF No. 76 at 8-9.

6              7.      **Additional Relief**

7        In addition to the relief discussed for each category of class member, Defendant will

8   "begin a study of the processes through which it monitors the California DDS's engagement,

9   review, and retention of empaneled consultative examiners," with the goal of identifying

10  "mechanisms to improve the monitoring of these processes." ECF No. 76 at 9.

11       Defendant has also "agreed to issue a document setting out processes for notifying

12  adjudicators when an individual CE provider previously engaged by the California DDS has been

13  disqualified for conduct determined to undermine the reliability of that provider's reports." Id.;

14  ECF No. 76-1 at IV.B.  "The document will also identify, to the extent feasible, processes for (1)

15  providing notice to claimants with open claims, and their representatives, that they were examined

16  by a disqualified provider and/or (2) providing new CEs to such claimants." Id.

17       Defendants will also "pay attorney's fees, both for pre-approval work already incurred and

18  for post-approval work in the future, and reimbursement of expenses and costs by Plaintiff's

19  counsel Justice in Aging and Legal Aid Society of San Mateo County in the amount of $490,000."

20  ECF No. 76 at 10; ECF No. 76-1 at VII.  "Plaintiffs' counsel Morrison & Foerster has agreed to

21  waive any attorney's fees and costs incurred in connection with this action." Id.

22       In exchange, "Plaintiffs agree to the dismissal of the Case with prejudice under Federal

23  Rules of Civil Procedure 41(a)(1) and 23(e)," and agree to "release, waive, acquit, and forever

24  discharge the United States, the Commissioner, the Social Security Administration, the California

25  Disability Determination Service, and all of their officers, employees, and agents, from, and are

26  hereby forever barred and precluded for prosecuting, any and all claims, causes of action, and/or

27  requests for relief that would be barred by the doctrine of res judicata were final judgment on the

28  merits entered on all claims asserted in this case." ECF No. 76-1 at VII-VIII.

United States District Court
Northern District of California

**D.     Analysis**

The Court concludes that the proposed benefits to be awarded to the class fall "within the range of possible approval."

**1.     Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While the parties agree that the outcome of a trial is "uncertain," they do not describe Plaintiffs' claims as "not particularly strong" or weak.  ECF No. 76 at 12; see also In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 946 (9th Cir. 2011).  Still, the Court agrees that it would be more expensive and time-consuming for the parties to litigate this case through trial, and that resolution of this action through settlement is appropriate.  Discovery and an eventual trial would surely prolong the wait class members face to obtain relief.

**2.     Non-Collusive Negotiations**

In examining the means by which the parties arrived at a settlement, the Court concludes that the negotiations and agreement were non-collusive.  The stipulated settlement was reached after the parties engaged in motion practice and participated in arms-length, extensive settlement negotiations overseen by an experienced and neutral third party.  ECF No. 76 at 14.  These assertions support the conclusion that the settlement is non-collusive and likely to benefit the class members.  See, e.g., Harris v. Vector Marketing Corp., No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).  While no formal discovery has taken place, the parties exchanged some documents and information "that allowed the parties to draft and refine the terms of the Settlement Agreement," and Plaintiffs' own investigation resulted in useful documents that were included in the SSA's prior filings.  Id. at 13; see In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." (citations omitted)).  The Court also agrees that counsel for both Plaintiffs and Defendants are experienced and competent.  ECF No. 76 at 13.

**3.     Presence of a Government Participant**

Defendant Carolyn W. Colvin is Acting Commissioner of Social Security and is charged by federal law with administering and supervising the benefit programs administered by SSA.

13

The Court agrees that her participation weighs in favor of approval.  Id. at 14.

### 4.       Obvious Deficiencies

The settlement has no obvious deficiencies.  The settlement addresses Plaintiffs' central claim by providing that class members will be afforded fair process to determine their eligibility for benefits without consideration of Dr. Chen's reports.  It also allows some class members to preserve Dr. Chen's report in their record by giving them the option of whether to challenge it. ECF No. 76 at 17.  The Court concludes that such relief falls within the range of possible approval.

### 5.       Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member.  The named plaintiffs receive the same relief as all other class members under the agreement.  The variations that are included in the different sub-classes reflect only that different class members occupy different procedural postures within SSA's administrative process.  The Court agrees that the agreement provides relief through the use of procedural mechanisms most appropriate for each sub-group based on procedural posture. While such differences may result in different types of relief for the different subclasses, they are rational in this instance because some claimants' claims are "closed" while others are "open," and the September 2011 distinguishing date represents when Defendant sent Dr. Chen a corrective action letter and was officially aware of problems with his reports.  See, e.g., Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1377 (9th Cir. 1993) (holding that two subclasses were rationally distinguished by events occurring on a certain date).  Thus, while Dr. Chen's reports may well have been deficient before that date, class members for whom Dr. Chen prepared a report before September 2011 may require extra evidentiary support for their claims.  This distinction reflects a reasonable compromise.

### 6.       Notice Procedure

"Courts typically require less notice in Rule 23(b)(2) actions, as their outcomes do not truly bind class members."  Lilly v. Jamba Juice Co., No. 13-cv-2998-JST, 2015 WL 1248027, at *8 (N.D. Cal. Mar. 18, 2015).  As the Supreme Court has stated, "[t]he Rule provides no

United States District Court
Northern District of California

1   opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District

2   Court to afford them notice of the action."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 362

3   (2011).  Yet the Court "*may* direct appropriate notice to the class."  Fed. R. Civ. P. 2(c)(2).

4          When, for instance, "the settlement provides for only injunctive relief, and, therefore, there

5   is no potential for the named plaintiffs to benefit at the expense of the rest of the class," notice "is

6   not uniformly required."  Green v. Am. Express Co., 200 F.R.D. 211, 212-13 (S.D.N.Y. 2001).

7   Such is the case here, as the settlement provides for injunctive relief and a readjudication process.

8   Unlike in Lilly, however, in this case class members are releasing all of their claims in exchange

9   for settlement relief.  Lilly, 2015 WL 1248027, at *8 ("[T]he settlement does not release the

10  monetary claims of class members.").

11         In any case, the parties have proposed that notice be provided to the class.  This is wise,

12  since class members' will have to take affirmative action if they desire their claims to be reopened,

13  and will subsequently be notified via the claim form procedure if the settlement agreement is

14  finally approved.  First, notice is to be published, at Defendant's expense, in three newspapers of

15  general circulation.  ECF No. 76 at 18.  Plaintiffs' counsel will also disseminate notice of the

16  settlement to "several organizations that are likely to interact with class members," and "provide

17  adequate notice of the proposed class settlement so that interested parties may object to its

18  reasonableness."  Id.  The Court agrees that individual notice of the settlement is not required

19  because class members are not afforded an opportunity to opt out.  Fed. R. Civ. P. 23(c)(2).  In

20  response to Plaintiffs' request, the Court will order publication of this Publication Notice.

21                        **7.    Claim Form Procedure**

22          If the Court approves the settlement agreement, the parties will send notice and

23  corresponding "Request Forms" to "individual class members based on the relief afforded to

24  them."  ECF No. 76 at 19.  The Notice forms will be sent to class members' last known address,

25  will describe their procedural status within the SSA process, apprise them of the opportunity and

26  risks associated with reopening their claims, advise claimants that they can have a representative

27  help with his or her claim and that the claimant may want to speak to that representative before

28  returning the request form, and includes an option to submit a different address.  Id.; ECF No. 76-

United States District Court
Northern District of California

1, Exh. A.  The Claim Forms require that class members return the forms within 30, 90, or 180 days, depending on their subclass, if they wish for their claims to be reopened.  Id.  It is fair and reasonable to require claim forms to enable the class members to make a choice as to whether to reopen their claims.

**8.      Notice Provision for Objections**

The Notice of Settlement contains a section entitled, "What Can You Do If You Object To The Settlement Or Have Other Comments?"  ECF No. 76-1 at 76.  Consistent with the Northern District's Procedural Guidance for Class Action Settlements, http://www.cand.uscourts.gov/ClassActionSettlementGuidance, the parties are ordered to amend that section of the Notice to read as follows:

> You can ask the Court to deny approval by filing an objection.  You can't ask the Court to order a larger or different settlement; the Court can only approve or deny the settlement.  If the Court denies approval, no relief will be awarded to the class and the lawsuit will continue.  If that is what you want to happen, you must object.

> You may object to the proposed settlement in writing.  You may also appear at the Final Approval Hearing, either in person or through your own attorney.  If you appear through your own attorney, you are responsible for paying that attorney.  All written objections and supporting papers must (a) clearly identify the case name and number (Hart v. Colvin, Case Number 3:15-cv-00623-JST), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before February 10, 2017."

**CONCLUSION**

The Motion for Preliminary Approval of Class Action Settlement Agreement is granted. The Court therefore orders as follows:

1.      The Court preliminarily approves the agreement set forth in the Settlement Agreement.  See ECF No. 76-1.

2.      The class certified in the Court's prior order, ECF No. 50, is modified to be defined as follows:

> [A]ll persons whose SSI or SSDI benefits were either denied or terminated and for whom a consultative examination was prepared by Dr. Frank Chen, and all persons who received a partially favorable decisions or determination on their claim for SSI or SSDI benefits and for whom a consultative examination was prepared by Dr.

United States District Court
Northern District of California

16

Chen.

3.      The Court sets the following dates and deadlines:

| Deadline | Action |
|---|---|
| Thirty (30) calendar days after the Court enters the Preliminary Approval Order | Defendant delivers the Publication Notice |
| Sixty (60) calendar days after the Court enters the Preliminary Approval Order | Plaintiffs' Motion for Final Approval |
| Fourteen (14) calendar days after Plaintiff files Motion for Final Approval | Defendant's Memorandum in Support of Final Approval due, if any |
| Ninety (90) calendar days after the Court enters the Preliminary Approval Order | Deadline for objections |
| Fifteen (15) calendar days prior to Final Approval Hearing | Replies due in support of motion for Final Approval |

4.      The Court sets the Final Approval Hearing for March 16, 2017 at 2:00 p.m.

IT IS SO ORDERED.

Dated:  November 9, 2016

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

17